## ANNA KNAPP, ADM'X, v. D. W. GRIFFIN.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 23, 1891—Decided March 9, 1891.

(a) The administrator of a decedent, who in his lifetime was secretive in his method of taking care of his estate, but intrusted many or most of his loans and collections to his son-in-law, sought to charge the latter for amounts of money alleged to have been received by him and unaccounted for to the decedent:

1. In such case, general assertions by the defendant, in casual conversations after the decedent's death, to the effect that he wished there was some one who knew something about the affairs of the deceased, that he himself knew nothing about them whatever, were irrelevant to the issue and inadmissible.

2. Slight inaccuracies in reviewing the facts, in a charge to a jury, with expressions of opinion as to the merits of the case, when accompanied by instructions that the facts are for the jury and they should remember them, and the alleged errors were not called to the attention of the court before the jury retired, are not ground for reversal.

3. Where a son-in-law, as the agent of his father-in-law, was in the habit of collecting money for the latter and investing it for him, a state of

mutual confidence existing, in the absence of evidence of non-payment, or of complaint on the part of the father-in-law in his lifetime, the money must be presumed to have passed into the possession of the owner: Eavenson's App., 84 Pa. 172.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 270 January Term 1890, Sup. Ct.; court below, No. 77 June Term 1883, C. P.

On April 9, 1883, J. S. Miller and Elisha Griffin, administrators of Henry Knapp, deceased, brought assumpsit against D. W. Griffin and Nancy E. Griffin. On April 30th, the record was amended by striking out the name of Nancy E. Griffin as a defendant. The defendant remaining pleaded non-assumpsit, payment with leave, etc. On April 11, 1887, the discharge of J. S. Miller and Elisha Griffin, as administrators, was suggested, and Anna Knapp, administratrix, was substituted as plaintiff.

At the trial on October 5, 1887, it was made to appear that Henry Knapp died on February 15, 1882, at the age of seventy-three years, leaving to survive him a widow, Anna Knapp, and three children, to wit: Nancy E. Griffin, wife of defendant, and Mrs. J. S. Miller, wife of the former administrator, both being his children by his first wife; and a minor child, Fannie, by his second wife. The decedent's estate consisted exclusively of personal property. In his lifetime, his money was kept in out-of-the-way places, and the most of his business in the way of loans and collections was intrusted to his son-in-law, D. W. Griffin, the defendant. The plaintiff sought to establish that the defendant had not accounted for various sums of money he had received as the agent of the decedent in his lifetime.

Mrs. Ruth Knapp, called for the plaintiff:

Q. Mrs. Knapp, soon after your brother's death do you remember hearing a conversation between Mr. Griffin, D. W. Griffin here and your sister Mrs. Washburn? A. Yes, sir. Q. What was that conversation?

Counsel for defendant ask for an offer.

Counsel for plaintiff propose to prove by the witness on the stand that, soon after the death of Mr. Henry Knapp, the wit-

Charge of Court below.

ness was present at a conversation between D. W. Griffin, the defendant, and her sister, Mrs. Washburn, in which the defendant declared that he had no knowledge of the business affairs of his father-in-law, Henry Knapp.

Counsel for defendant object to the offer as irrelevant to the issue.

By the court: We sustain the objection and reject the evidence; exception.[1]

At the present stage of the case, the court doesn't see how this is evidence; they are mere general assertions which may possibly be evidence in rebuttal, at a further stage of the case.

Uriah McDonald, called for plaintiff :

Q. You have already testified you were one of the appraisers of the Henry Knapp estate? A. Yes, sir. Q. Where did you get these bank-books? A. One in the trust company's bank, Mr. Griffin gave me. Q. Which Griffin? A. D. W. Q. What did he say to you when he gave it to you, if anything? A. " Here is something on this you want to appraise."

Counsel for plaintiff propose to prove by the witness on the stand, who was an appraiser of the estate of Henry Knapp, deceased, that in a conversation with the defendant, D. W. Griffin, D. W. Griffin asserted that he wished there was some one who knew something about the affairs of Henry Knapp, that he himself knew nothing about it whatever.

Counsel for defendant object to the offer as irrelevant and entirely foreign to the matter at issue.

By the court: The evidence in this case already shows that D. W. Griffin did, at a particular time, make known to the witness particular items, as shown in the evidence heretofore, at proper times, and on proper occasions, and the general testimony proposed to be offered in this case under the circumstances is not proper testimony. The objection is sustained, and the evidence rejected; exception.[2]

Other facts in controversy sufficiently appear in the charge of the court below.

At the close of the testimony, the court, HAND, P. J., charged the jury in part as follows :

Now, what is the plaintiff's claim in the case : What do they claim here before you? They claim seven items against this

Charge of Court below.

defendant, and they claim to have proved that he not only received this money, but appropriated it to his own use, and has it to-day in his possession unaccounted for to Henry Knapp, or to his estate.    That claim they must establish by evidence.

1. The Miner Knapp loan of a thousand dollars and interest.

2. The payment on the A. J. VonStorch judgment, of four hundred dollars.

3. The dividends received from the assignees of the trust company, amounting, as they claim, to $1,859.16.    We think they make a mistake in this claim, which we will call your attention to hereafter.

4. The item from the Providence bank, of eight hundred dollars.

5. The payment on the J. H. Johnston judgment, of ninety dollars.

6. The government bond of five hundred dollars.

7. The bag of money from Mrs. Brock, now Mrs. Knapp.

We will take these items up in order, gentlemen, and refer to the evidence briefly and somewhat in detail, but if we omit any circumstance proved to your satisfaction, which throws any light upon the matter, you will supply it from your recollection.    Now, first, as to the Miner Knapp judgment; and, as we go along, we shall lay down some principles of law for your guidance, deeming it is better to do it in connection with the facts than to do it generally, so you may understand the bearing of it.    We do this because of the nature of the evidence in this case; it is of that character which we think requires the court to go into more detail in regard to the facts than we otherwise would.

The Miner Knapp claim was a loan of a thousand dollars. They claim to establish this by two modes of testimony; one a remark which Mr. McDonald made that Mr. Griffin admitted that he received that, which is in the nature of an admission, and in regard to admissions we shall have something to say to you.    The other class of testimony is by direct proof on the part of Miner Knapp.    You saw that Miner Knapp's recollection, in regard to dates and times, was very indefinite.    So far as he testified, he stated that the loan was made about ten years ago, which would make it about 1877; it was paid he don't know when.    These dates, I say to you, that we give you, will be

Charge of Court below.

very important in your consideration of the case. With reference to the presumption of payment we shall charge you hereafter. Miner Knapp testifies this loan was made about ten years ago; it was paid he don't know when. . . . .

As we said, Henry Knapp knew of this loan; if you believe the testimony of Miner Knapp he knew when it was paid, or about the time when it was paid. These are important facts, because, if the note was given, it must have been either in the possession of D. W. Griffin, or the possession of Henry Knapp. Presumably it would be in the possession of Henry Knapp, if there was no clear evidence to the contrary, as it was his loan. And you will see the pertinence of this length of time of Henry Knapp's knowing, because the question is going to come with reference to the question of the presumption of payment.

The law does presume that debts are paid after a certain length of time. An absolute payment, as we say, arises at the end of twenty years, and a jury are authorized to conclude that a presumption of payment has arisen before twenty years, if the circumstances surrounding the case are persuasive to that extent. [And we say to you, the following circumstance may be considered as persuasive of the payment of this money over to Henry Knapp by D. W. Griffin : First, that he was his son-in-law ; and the Supreme Court have laid down this as law, that where a son-in-law, at the request of a father-in-law, receives money, where they are on intimate terms, their relations are good, where they are living together, if that is the case, and he receives the money as agent for his father-in-law, the presumption is that he paid it over to him; the presumption of law.] [3]

[Now, as to what circumstances are sufficient, must be for the jury under all the testimony, and as we say with reference to this claim, the same is true with reference to every one of the claims received by Mr. Griffin. The presumption of payment may arise before the period of twenty years, provided the circumstances are persuasive to that extent. And we say the fact of his relationship; the fact of their relations to each other; the mode in which they dealt with each other; the length of time, more or less, that followed the receipt of the money, or the loan of the money; the mode in which the decedent did his business ; the mode in which he kept his money ; whether he was anxious to have his assets reduced to silver or

Charge of Court below.                    •

money specifically; and the whole manner in which they did their business, are circumstances from which, if they warrant you, you may conclude that the presumption of payment has arisen in favor of the defendant, and your verdict will be accordingly in his favor.

In order that you may understand this as clearly as the Supreme Court have laid it down, we will read to you some of the circumstances which have entered into the consideration of such a case. In this connection, we will read you the principles of law governing the question of the presumption of payment somewhat at length. In the case to which I refer, the following language is used: " The payments referred to were payments to George Eavenson. That they were received by the hands of his daughter or her husband is not material. The money was paid in the presence of the testator. The Woods were merely his servants, so far as these transactions were concerned. In the absence of any evidence to the contrary, the money must be presumed to have passed into the actual possession of the testator. If the Woods embezzled it, that fact must be shown. The law raises no such presumption." The principle is also correctly stated by Mr. Willard, in his argument, that where a duty devolves upon a person, to perform in his relationship to another, the presumption is that he performed it, unless the proof shows the contrary. In another case, the following language was used: " He," that is, the party who received the payment in this case, " was the mere conduit-pipe for the transmission of the fund from Eichbaum to the tenant for life; and, in the absence of contrary proof, it is to be presumed that the transmission was for that purpose. If he retained any portion of it, it should have been shown. As agent, he was liable to account for the full amount received, and we must take it he did so account."] [20] . . . . .

One word with regard to the law as to admissions. [The most of these claims are, as they bring them before you, founded on what they call admissions on the part of D. W. Griffin, which he made to Uriah McDonald.] [19] An admission is legitimate evidence, but you are to understand that it is not always the best evidence, and admissions are always to be scanned carefully. A few remarks will show you the reasonableness of this. They have undertaken to prove the admissions of D. W.

Charge of Court below.

Griffin. Where they prove them by himself, they amount then to direct testimony; where they prove them by another person, of course they amount to secondary testimony; because you have not only got to believe the testimony of the witness who testifies to the admissions, that he is telling the truth when upon the stand, but you have got to believe that he states the admissions exactly, or in substance, as the defendant stated them at the time. A witness may fail on either point; he may not state the admission just as it was made; or his recollection may be defective; or he may have misheard it, or other things may have occurred. We speak of this, not because it is necessarily the fact in this case, but to show you, when you are depending upon admissions, that you are to give them more careful scrutiny than ordinary testimony. . . . . .

There is a dispute upon this matter, in the evidence, and this brings up the principle of law that, where a party undertakes to prove an admission of another party, he must give the whole admission, and if a portion of it serves the party who made the admission, he must not leave it out; the whole must be given for the consideration of the jury. Mr. McDonald states that he said in all these cases, that he had received this money, and he goes no further. Mr. Griffin, on the stand, admits these conversations in the main, but states that with each of them he stated that he had accounted to Mr. Knapp for the sum of money. This brings you to the point of determining whom you will believe under all the circumstances of the case. Of course this does not throw out of consideration any evidence that proves directly that he had the money and that he appropriated it to himself, if there be such evidence, but it simply goes to the force and strength of the admission made at the time. I have spoken of this at length, because it applies to nearly all the items of this transaction, so far as the evidence of admissions goes.

[We have spoken first of the Miner Knapp claim. Now does the evidence show that D. W. Griffin, taking it altogether, has this money in his possession, and has appropriated it to his own use, or that he has it still in his possession?] [15] Or, does the presumption which we have laid down to you, under the circumstances of the case, lead you to conclude that he paid it over to Mr. Knapp?

Charge of Court below.

[With reference to the A. J. VonStorch claim, four hundred dollars. This was a payment on a judgment which was taken in D. W. Griffin's name. Something has been said, we will state here, as it occurs to us, that D. W. Griffin did wrong in taking liabilities in his own name. There is some evidence in the case, I do not call to mind who testified to it, but that at one time Mr. Knapp himself told him to take a claim in his own name. I simply speak of that in this connection, for your consideration.] [4] [This claim of four hundred dollars is based upon an admission of Mr. Griffin made to Mr. McDonald.] [5] The conversation took place either before the burial of Mr. Knapp, or the day after, I think; he stated that that judgment, although in his name, was Mr. Knapp's money; and that he had received four hundred dollars of it. Mr. D. W. Griffin states in his testimony that he told Mr. McDonald that he had accounted for it. [That judgment is dated the eighth of November, 1877. The date when the four hundred dollars were paid does not appear; it was given five years before Mr. Knapp died. The balance of the judgment was assigned to the estate, so that, of course, no claim can be made upon that against Mr. Griffin. The only question in the case, under all the evidence in the case, is, does the evidence show that Mr. Griffin still has it in his possession?] [16] The same rule of law in regard to presumptions arises in this matter as arises in the other.

The third matter is the dividends from the assignees of the trust company. We are obliged to go into that more in detail than we would if counsel themselves had dwelt upon it. We are now considering, gentlemen, the payments of dividends from the assets of the trust company. In their statement they made a mistake; they make a claim of $1,859.16; which includes the first dividend, and there is no evidence that it was paid to D. W. Griffin, namely $399.66. [The only evidence in the case, direct evidence, is that four payments marked "D. W. Griffin," of $364.80 each, were paid to him. The date of the first payment was August 30, 1880, nearly two years or a year and a half before Mr. Knapp died. The second was November 3, 1880; the third was April 18, 1881; the fourth was July 23, 1881. These are all the payments that are proved directly to have been made to D. W. Griffin. When McDon-

. Charge of Court below.

:ald came there, he handed him this book and said there was :something to appraise. Of course, nothing can be inferred .from that, except the balance that was due upon it; there was .no admission of liability on the part of D. W. Griffin by that :statement, unless he stated particularly what was to be appraised. But the balance which was then due would be a matter for appraisal; it would be an item, not against D. W. Griffin, but one which the administrator would have the right to receive, and, the balance having been paid to the administrator, it seems to dispose of that item.] [6] There is no question under the evidence, if you believe it, but that D. W. Griffin did receive the money at the times here mentioned. The only point is, does the evidence and the rule of law in regard to presumptions lead you to presume that he paid it over to Henry Knapp in his lifetime? [I think Mrs. Griffin testified that, as to two of these payments, if I am wrong you will correct me, Mr. Knapp was at the house when Mr. Griffin went for them, and waited until he came home.] [7] Of course, if you believe that testimony, the presumption of law that we have read to you applies, that D. W. Griffin is not to be held for these two sums. This is also a circumstance with reference to the others, a slight circumstance, in connection with the relations of the parties, as to whether you will believe he paid the others over. Under the principles we have stated to you, where a duty is upon a person to perform a thing, the presumption, unless the contrary appears, is that he performed it. You will consider, also, the relations of the parties, and all the circumstances connected with the case which point in that direction, if they do point.

[The next item is the item of eight hundred dollars in the Providence bank. That is marked as follows: " 1878, August 20." That was three and a half years before Mr. Knapp died. " Cash to D. W. Griffin, eight hundred dollars." What are the facts with regard to that? Does the evidence show that it is still in the possession of D. W. Griffin?] [17] [There is evidence, which we call to your attention, it is wholly for you, however, that when the loan was made to Miner Knapp, which was about, he says, about ten years ago,—ten years exactly would carry it from this time to 1877, nine years would carry it to 1878,—that the thousand dollars was made up by going to

the bank and drawing the money.   Under this evidence, it is
for you to say, whether that eight hundred dollars was a part
of the loan.   If they had given exact dates in the testimony,
of course we could tell.   If it was before this was drawn out
that the loan was made, and you may conclude that to be the
case, then of course this item did not go into it.   He says it
was about ten years, which would be between nine and ten
years, and if they did not draw the whole money there, but it
went to make up the money, you may conclude that this eight
hundred dollars was in that.] [8]   Of course, you would not
charge it to him twice.   I believe this is all the evidence with
regard to this item.   We are endeavoring to bring to your
minds all the evidence that occurs to us; if we omit anything
you will correct us.

The next item is the sum of ninety dollars, called the John-
son payment.   It seems that that was a judgment taken, I
think, in the name of D. W. Griffin, but the item claimed is
the item of ninety dollars due by Mr. Griffin, which he re-
ceived.   The judgment is dated the eleventh of March, 1880.
Ninety dollars you will see is just one year's interest on the
fifteen hundred dollars.   Whether it was paid in 1880, or sub-
sequently, I think the evidence does not show.   It was the in-
terest, at all events, that belonged to Mr. Knapp.   The rest of
the judgment has been transferred to the estate.

The next item is the matter of the government bond.   We
have read you the evidence with regard to the government
bond, so far as the admission of Mr. Griffin went in the mat-
ter, at the time when Nancy came in, also, and stated about it.
You have heard, also, the testimony of Mr. Griffin himself, on
the stand, with regard to that admission.   Of course he is not
allowed to testify as to what he did with the bond before Mr.
Knapp's death, because the law shuts him up against that;
but he testified that at the time he denied having the govern-
ment bond.   [McDonald did not state the admission exactly
as he made it, as we recollect the testimony.] [9]

The last item under consideration is the bag of money, and
perhaps this item brings up before you the peculiarities of
this decedent, which have been dealt with more or less by both
sides, as much as anything in the case.   As I recollect the tes-
timony, it is that at the conversation Mr. McDonald said, "You

received two thousand dollars from Aunt Ruth, and he says, he did." He says that he did not state the matter in that way. [He states that he received a bag of money; in that respect they agree; Mr. McDonald says it was in a bag, and that Aunt Ruth said that Henry Knapp said it was a thousand or two.] [10] It corresponds with Aunt Ruth's statement of it herself. [This bag of money was given to her up at Sayre, remained in her possession for fifteen years, coin, gold and silver, Mexican pieces, and Henry Knapp handed it to her, and said there was a thousand or two ;] [11] she kept it without opening it so long, until finally she said she wished he would take it away. He said he would send D. W. Griffin for it. He did send him for it ; he received the bag of money, the two bags I believe. [He testifies that he did not open it ; that he delivered it to his wife, a daughter of the decedent, and that upon the first Sunday she delivered it to her father, or, as she testifies, that is what he said ; she testifies that this is what took place. If you believe this testimony, gentlemen, on the part of the defendant, Mrs. Griffin here, it is conclusive in regard to this item.] [12]

There is evidence, that at his death, they found pieces of money, a large amount of money, twenty-four hundred and some odd dollars ; whether that includes the six hundred that was in the box I do not know, perhaps the testimony will clear that up for you ; but they did find money amounting to twenty-four hundred dollars in two barrels of rye ; they claim that the tops of the barrels were so worm-eaten that it shows it must have been there a great deal longer than the time when he received it; that it could not have been the same money. How long it takes worms to make a solid mass on the top of a rye barrel, perhaps you are conversant with, but whether it was the same money or not, it shows the peculiarities of Mr. Knapp. There is some evidence that he stated to Thorn Griffin, about this time, that he was going to bury his money so deep that he could not lose it; he had been losing it, or the estate had been diminished; he spoke of losses, etc. We say that the same presumptions apply in this case that do to the others, the same presumptions of law; perhaps a little stronger in this case than in the others, because here was a bag of money that had been kept without being opened for fifteen years; [it

Charge of Court below.

was in bulk, and so received, and there is no evidence that Mr. Griffin opened it; his own evidence is to the contrary, or the evidence of his wife.] [13]   The evidence does not go to the extent that it was a payment of money to him, so that the way it came into his possession, perhaps the natural conclusion you will come to, is that he was simply the agent of Henry Knapp to go and get that money and bring it back; or, it was a bailment of a specific article to him for the time being, and that he brought it back, and that the presumption is, from their relationship and the other circumstances of the case, that he performed his duty in regard to it, and passed it over to Mr. Knapp. [We say to you, that you will not charge this against D. W. Griffin, unless the evidence is clear and rebuts the presumption of law we have laid down to you, and shows that he did appropriate it to his own use, and still has it in his possession.] [18] . . . . .

Now, gentlemen of the jury, take up this case under all the testimony remembering that the plaintiff is entitled to nothing that she has not clearly proved under the evidence, and that she is entitled to all that she has clearly proved; remembering also the rules of law that we have given you.   The difficulties with regard to the case, you may take into consideration, in weighing the evidence, not that the presumption is admitted against the defendant because it is difficult for the plaintiff to prove her case, but simply to ascertain whether the evidence does come up to the point of proving the case against the defendant.   So far as the plaintiff proved the case to your satisfaction, the verdict should be against the defendant for such amount, with interest on the same from the time he received it and appropriated it to himself up to to-day.   If he has received any item and has accounted for it, or the presumption does arise that he has accounted for it, then of course your verdict will be for the defendant, so far as that item is concerned.

—The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error:

1, 2. The refusal of plaintiff's offers.[1] [2]

3–20. The portions of the charge embraced in [ ] [3 to 20]

*Mr. C. H. Sopher* and *Mr. Alexander Farnham*, for the appellant.

*Mr. E. N. Willard* (with him *Mr. Everett Warren* and *Mr. Ward*), for the appellee.

Counsel cited: Eavenson's App., 84 Pa. 172; Pickering v. Stamford, 2 Ves. *583; Webb v. Dean, 21 Pa. 32; Diamond v. Tobias, 12 Pa. 314; Rogers v. Burns, 27 Pa. 527; Hughes v. Hughes, 54 Pa. 242.

OPINION, MR. CHIEF JUSTICE PAXSON:

We do not think it was error to reject the offers of evidence embraced in the first and second assignments. The declarations of the defendant, which it was proposed to prove, were not relevant to the issue, and if admitted would not have been of any value.

The remaining assignments allege error in the charge of the court. The charge is cut up into a multitude of small fragments, and error assigned to each separately. Some of the statements of the learned judge in regard to the facts are criticised as being inaccurate. If we concede there were some inaccuracies in the lengthy review of the facts, they were slight, and the jury were expressly told that the facts were for them. It does not appear that the attention of the court was called to these alleged errors before the jury went out. Had this been done, they could and no doubt would have been corrected at the time. It is only fair to a judge who is dealing with voluminous facts and in the hurry of trial makes a slip, to call his attention to it, and thus give him an opportunity to rectify it. When this is not done, and the point is raised for the first time here, the error would have to be serious to induce us to reverse, especially when all the facts had been left to the jury, with a caution to remember them.

Complaint is made in the third, fourth, and twentieth assignments that the court below attached too much importance to the fact of Mr. Griffin's relations to Mr. Knapp, his father-in-law, in considering the question of the presumption of payment. We have considered this feature of the case carefully, and are not prepared to say that the court erred. Taking the charge as a whole, we think it was justified by the circumstances of the case

and the course of dealing between the parties. The mere fact that Griffin was Knapp's son-in-law, standing alone, is not very significant; but, when it is coupled with the further facts that he was also Knapp's agent and attended to many of his pecuniary affairs, and had been doing so for many years; that he was constantly in the habit of receiving money for his father-in-law, and investing the same; and that a state of mutual confidence existed between them, it brings the case fairly within the doctrine of Eavenson's App., 84 Pa. 172, where it was held that where a son-in-law acted as the agent of his father-in-law, and in his presence and by his direction received money for him, in the absence of evidence to the contrary the money must be presumed to have passed into the possession of the latter.

This is in accordance with the known habits of business. Where one sends his agent or clerk to the bank with a check to draw money, or to a debtor to collect a debt, it is unusual for such agent or clerk to take a receipt from his employer when he pays him the money thus received or collected. In the absence of any evidence of non-payment, or of complaint on the part of the principal in regard to it, it is fair to presume the agent has performed his duty. In this case, there is no evidence that Mr. Knapp ever alleged or charged that his son-in-law had withheld any money due him, or had in any manner defrauded him. The complaint comes from his administratrix. It often happens that a course of dealing, which is entirely satisfactory to a man during his life, proves unsatisfactory to his legal representatives after his death. The learned judge below evidently entertained a very decided opinion upon the merits of the case. This is sometimes necessary in the interests of justice, and so long as he does not interfere with the province of the jury, we are not prepared to say it is error. In fact, we have repeatedly said it was not. In this case, there was nothing beyond the expression of an opinion, which it was his right and may have been his duty to give. The jury were left free to find the facts from the evidence. We are of opinion that the course of dealing justified the language of the court.

Judgment affirmed.