# White et al. *v.* Moore et al.

*School laws—School directors—Removal from office—Purchase of coal without publication—Public notice—School supplies—Acts of May 18, 1911, P. L. 309, and July 10, 1919, P. L. 889.*

1. It is reversible error for the court to remove school directors for purchasing coal without publication for bids, where it appears that no newspaper was published in the district, that past experience showed that mere posting did not result in procuring bids, that the directors mailed letters to ten different coal dealers, that bids were received from four of them, that their bids were opened, and the contracts awarded to the lowest bidder at a regular meeting of the board.

2. Such a letting of the contract is covered by section 617 of the Act of May 18, 1911, P. L. 309, as amended by the Act of July 10, 1919, P. L. 889, requiring contracts in excess of $300 to be entered into "with the lowest responsible bidder, upon proper terms, after due public notice has been given for competitive bids."

3. Coal is not included in "school supplies" of the second class within the meaning of section 706 of the Act of May 18, 1911, P. L. 309, so as to bring it within section 708 of the code requiring public advertising where the amount purchased exceeds $300 in value.

*Appeals—Point not raised below—Basic error.*

4. The rule that the Supreme Court will not reverse on grounds not considered by the court below, but raised for the first time on appeal, will not be applied where there has been some basic or fundamental error seriously affecting the merits of the case.

5. The removal of public officers because of their failure to follow the directions of a portion of an act not applicable to the matter in question, is such a fundamental error as will require correction on appeal, although the question of the wrongful construction of the act was not raised in the court below.

Argued January 11, 1927. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 137, Jan. T., 1927, by Irma B. Cullings, Jesse T. Workman and Edmund A. McCadden, from decree of C. P. Delaware Co., June T., 1925, No. 2545, on bill in equity in suit of Herbert S. White et al. v. Benjamin F. Moore, Clyde A. Campbell, Irma B. Cullings, Jesse T. Workman and Edmund A. McCadden, School Directors of the School District of Prospect Park Borough.   Reversed.

Taxpayers' bill to remove school directors.

The opinion of the Supreme Court states the facts.

The case was heard before JOHNSON, P. J., who died before filing an opinion.   BROOMALL, J., entered a decree removing Irma B. Cullings, Jesse T. Workman and Edmund A. McCadden from their office of school directors. The defendants so removed appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Francis Shunk Brown,* with him *William C. Alexander,* for appellants.—The facts do not justify a decree of ouster: Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Phila. Co. v. Pittsburgh, 253 Pa. 147; Whetstone v. Stapleton, 47 Pa. C. C. R. 222; Scranton City School Directors, 6 Pa. D. & C. 105.

Coal is not "school supplies" within the meaning of section 708 of the School Code.

*George H. Detweiler,* for appellees.—It is too late to raise the question whether coal is "school supplies."

The court committed no error in removing the directors: Summit Hill School Directors, 258 Pa. 575; Slippery Rock Twp. School Directors, 222 Pa. 538.

OPINION BY MR. JUSTICE FRAZER, February 7, 1927:

This proceeding is under section 217 of the School Code of May 18, 1911, P. L. 309, for the removal of school directors for violation of the provisions of section 708

of the code, relating to the purchase of supplies, and also section 617 relating to the letting of contracts for construction or repairs. After answer filed and testimony taken, the judge who heard the evidence died before adjudication was entered and the case was referred to another judge who filed an opinion in which he found, as a fact, that respondents had violated the provisions of section 708 in that they purchased coal in an amount in excess of $1,300 without publication in accordance with the provisions of that section. The court therefore made an order removing three of the directors from office, the term of office of the remaining two having expired in the meantime. From such order we have this appeal.

The provisions of the School Code which must be construed in disposing of this appeal are as follows: "Section 706. School supplies shall be divided into two classes. The first class shall include school desks, chairs, typewriters, and school apparatus. The second class shall include maps, globes, and all other supplies, except textbooks, necessary for school use, not included in the first class.

"Section 707. When it is deemed necessary to purchase desks or other supplies of the first class, costing one hundred dollars ($100) or more, the board of school directors shall solicit sealed quotations from two or more firms, manufacturers, or dealers in such supplies, and at regular meeting shall open such bids and quotations, and shall accept the lowest bid, when the kinds of supplies offered, and their kind, quality, and character of material, are the same, or are equal or satisfactory; Provided, that any school district may purchase school furniture and other equipment from another district, without asking for competitive bids.

"Section 708. All supplies of the second class, costing three hundred dollars or more, shall be awarded and purchased only after public notice has been given by advertisement, published once each week for three weeks in

not less than two newspapers of general circulation: Provided, That, in any district where no newspaper is published, said notice may, in lieu of such publication be posted in at least five public places. Such advertisement or notice shall give all necessary information, or give notice of convenient access thereto, in such manner that bidders can intelligently make bids for such contracts."

The petition charged respondents failed to comply with the above provisions in purchasing school supplies of the first class, consisting of desks, piano, janitor's supplies and a flag pole, and also failed to advertise for bids for coal and school supplies of the second class, consisting of pencils and tablets. The alleged violation of section 617, relating to the procuring of competitive bids for labor and materials in the construction or repairing of buildings, consisted of the failure to require contractors to give bond for the laying of sidewalks, grading and pointing. Many of these charges were not supported by proof, while others were satisfactorily explained by respondents, and the court below based its opinion solely on the admitted failure of respondents to advertise or post notices requesting bids for coal, saying: "We therefore experience no difficulty in finding the fact that the respondents have violated the requirements of the School Code in the respect referred to. It is therefore unnecessary to consider the other matters of the complaint."

The court below based its conclusion on the assumption that the contract for the purchase of coal was within section 708 of the code specifying the method of advertising for the purchase of school supplies of the second class. After a careful examination of this and other sections of the act, we are unable to agree with the court below in its classification of coal. The sections which it is charged respondents violated are under article VII which bears the general heading "books, furniture and supplies," and the first section (701) requires the board to "purchase all necessary furniture, equipment, text-

books, school supplies and other appliances for the use of the public schools......and furnish the same free of cost for use in the schools.   All furniture, equipment, books, school supplies......for the use of the public schools therein, shall be purchased in the manner provided in this act."   Section 706, quoted above, divides "school supplies" into two classes.   Clearly coal is not a "school apparatus" within the first class, and it seems equally clear that it does not come within the phrase "other supplies......necessary for school use, not included in the first class."   The entire article VII indicates the "supplies" the legislature had in mind were such as are generally used by pupils or for their instruction, and not such materials as might be needed in connection with the maintenance of buildings, like fuel, light, water or repairs.   These matters properly belong to the subject of "Grounds and Buildings" under article VI, the first section of which (section 601) provides that "The board of school directors of each district shall provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of six and twenty-one years, in said district, who attend school. Such buildings shall be constructed, furnished, equipped, and maintained in a proper manner as herein provided, suitable provisions being made for the heating, ventilating and sanitary conditions thereof, so that every pupil in any such building may have proper and healthful accommodations."

Section 630 of article VI provides that "The board of school directors in any school district may, in the manner herein provided, enter into any contract with any person, firm, association, or corporation for the furnishing of light, heat, or water to such school district, for any term not exceeding five years."   While the purchase of coal is not necessarily the "furnishing" of heat, it is necessary to the "maintenance" of the school buildings in a "proper manner" within section 601 of the act and the "manner herein provided" for letting the contract is

covered by section 617, as amended by the Act of July 10, 1919, P. L. 889, requiring contracts in excess of $300 to be entered into "with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids."

The reason stated by respondents for failing to advertise or post notices is that no newspaper was published in the district and that past experience of the board had shown that posting did not result in the procuring of bids, and they had, accordingly, established the custom, of sending letters to dealers in the community and elsewhere, asking for sealed bids. This course was pursued in the present case, letters having been mailed to ten different coal dealers and bids received from four of them, these bids having been opened and the contract awarded to the lowest bidder at a regular meeting of the board.

The above construction is further supported by other provisions of the act in which fuel is recognized as being distinct from school supplies. Section 403 relating to the manner of voting on designated matters, refers to "contracts of any kind, including the purchase of fuel or any supplies." Sections 1441 and 1716 both classify separately "textbooks and school supplies" and "fuel, light, water and janitor service." These provisions serve to confirm the view that under article VII the legislature was dealing only with such supplies as are ordinarily purchased for use in classrooms or for other educational purposes and not such as might be needed for the maintenance of the buildings. Since the respondents are charged with violation of the provisions of article VII of the code, and the proofs have wholly failed to sustain the charges, it follows that respondents have been wrongfully deprived of their office and any further discussion is unnecessary.

Appellee argues that it is now too late to raise the question whether coal is "school supplies" because this point was not argued in the court below and not passed upon by that court. The rule that this court will not

reverse on grounds not considered by the court below but raised for the first time on appeal, will not be applied where there has been some basic or fundamental error seriously affecting the merits of the case. Thus in Provident Life & Trust Co. v. Phila., 202 Pa. 78, 81, this court said, (page 81); "Where there has been a fair and careful trial, an objection raised for the first time in an appellate court should not lead to a reversal unless it is a serious one and affects the merits: Knapp v. Griffin, 140 Pa. 604; Jaffray v. Frothingham, 148 Pa. 213; Krepps v. Carlisle, 157 Pa. 358; Halfman v. Penna. Boiler Ins. Co., 160 Pa. 202." And in Sikorski v. Phila. & Reading R. R. Co., 260 Pa. 243, we said in an opinion by our present Chief Justice (page 249): "In fact, the proper maintenance of the long established and just rule that a trial court will not be reviewed on matters in no way called to its attention, unless for basic and fundamental error imperatively calling for reversal, requires that the provision in question be so construed." See also Stone v. Stone, 277 Pa. 277, 278, and cases cited.

Just what errors are to be considered basic or fundamental must necessarily depend upon the facts of each case. We have no hesitancy, however, in holding that in the present case the decree of the court below, including as it does the removal of public officers because of their failure to follow the directions of a portion of an act not applicable to the matter in question, is such a fundamental error as should bring the case within the exception to the rule in question. To deprive a person of office because of failure to follow mandatory duties prescribed by statute, the further result of which is also to deprive him of eligibility for the same office for a period of five years, is a drastic procedure and before such penalty is imposed there should be at least clear proof of breach of duty. In our opinion the record before us fails to disclose such clear breach of duty.

The decree of the court below is reversed and the petition is dismissed.