Commonwealth *v.* Williams, Appellant.

558

Argued April 17, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Benjamin Lerner,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*David L. Creskoff,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney,

*Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 27, 1968:

The defendant, Ronald Williams, was indicted on bills of indictment charging him with rape, aggravated robbery, aggravated assault and battery, carrying a concealed deadly weapon and conspiracy. At the conclusion of his trial, on August 8 and 9, 1966, a jury convicted him of all charges. Defendant's motions for a new trial and in arrest of judgment were denied, and sentence was duly imposed.*

Defendant appealed to the Superior Court, which affirmed the judgment of sentence in a Per Curiam Order.** We allowed an allocatur.

There is not the slightest merit to support defendant's motion in arrest of judgment. It is hornbook law that the test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, is whether accepting as true all the evidence and all reasonable inferences therefrom upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crimes charged. *Commonwealth v. Finnie,* 415 Pa. 166, 202 A. 2d 85; *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552; *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861; *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728.

On the evening of May 6, 1966, the prosecutrix, Mrs. Mary Benton, was visiting her friend, Mrs. Smith, at Mrs. Smith's home on North Eleventh Street in

---

* Except on carrying a concealed deadly weapon and conspiracy, on which sentence was suspended.

** Judge HOFFMAN and Judge SPAULDING dissented.

Philadelphia. Some time after midnight, Mrs. Smith's son, Floyd Smith, came home and offered to accompany Mrs. Benton to her home. They left the Smith home together and proceeded to a bar at Eleventh and Norris Streets, where Smith telephoned for a taxi to take Mrs. Benton home. Smith was told that there would be about an hour's wait for a taxi. He and Mrs. Benton then had a drink in the bar and decided to walk the rest of the way to Mrs. Benton's home.

Mrs. Benton and Smith left the bar and began walking west on Norris Street. About two blocks from the bar, according to Mrs. Benton's testimony, defendant and another man approached them from the rear, held a knife to Smith's neck, and said, "This is a stickup." The two men robbed both Mrs. Benton and Smith of some money, and then defendant knocked Smith unconscious. Mrs. Benton testified that defendant and his companion then beat her severely about the face, forced her to walk with them for about a block and a half, and then dragged her into an alley where defendant raped her.

While defendant was having sexual intercourse with her, police officer Bennett arrived on the scene and arrested the defendant. Mrs. Benton was taken to the Philadelphia General Hospital, where she was examined by a doctor.

Floyd Smith testified that while he was walking with Mrs. Benton to her home, defendant and another man came up behind them and robbed them. He further testified that defendant held a knife to his throat and then knocked him unconscious, and when he regained consciousness, he went home and went to sleep, and made no complaint to the police.

Defendant, Ronald Williams, testified in his own behalf. His testimony may be thus summarized. He denied participating in any of the alleged crimes. He

and his brother William met the prosecutrix in the bar at Eleventh and Norris Streets at about 12:30 a.m. on May 7. While he was talking to the bartender, his brother and Mrs. Benton left the bar together. Defendant followed them out to the street, where his brother told him to "come on." Defendant then followed his brother and Mrs. Benton to an alley. Mrs. Benton and his brother then went into the alley together while defendant waited outside. After about ten minutes, defendant started to go into the alley, when Officer Bennett suddenly appeared and arrested him. Defendant further testified that while following his brother and Mrs. Benton, he did not hear Mrs. Benton cry out or see her attempt to leave his brother at any time.

Defendant presses two contentions—(1) the Court's charge on "reasonable doubt," and (2) the admission of police testimony regarding defendant's conduct at the time of the arrest.

## Reasonable Doubt

We have never adopted and *required* a standard charge or definition of reasonable doubt. In *Commonwealth v. Burns*, 409 Pa. 619, 187 A. 2d 552, the Court said (page 635):

"The burden is on the Commonwealth to prove the defendant guilty beyond a reasonable doubt. Reasonable doubt as defined by the Court in Commonwealth v. Donough, 377 Pa. 46, 51, 52, 103 A. 2d 694 (1954), is as follows: 'A variety of definitions of "reasonable doubt," all expressing substantially the same thought, have been approved by the appellate Courts— See Commonwealth v. Kluska, 333 Pa. 65, 3 A. 2d 398. A standard and approved form of charge on this point would be: "The defendant comes before you presumed to be innocent and the burden is upon the Com-

monwealth to prove his guilt beyond a reasonable doubt. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising out of the evidence itself, the kind of a doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself)." ' "

Defendant took *no exception* to the Court's charge and the question before us is therefore whether the trial Judge's charge on this important point constituted basic fundamental error.

The Commonwealth contends that the Court's charge, which included elements from both *Commonwealth v. Donough,* 377 Pa. 46, 103 A. 2d 694, and *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398, was both fair and adequate. The trial Judge charged on this point as follows:

"You have heard a lot about the term reasonable doubt, and that is to be considered as something that would make a mature person pause before jumping at a conclusion. It has to be something that cannot be pulled out of thin air or the blue sky, but it must be found on the evidence and nothing else.

"It cannot be based on any peculiarity or idiosyncrasy, because we all have some of those, but don't bring them into this case.

"Reasonable doubt is a doubt that can arise when you feel, as a responsible, mature person, that you can go no further with a conviction. The burden is on the Commonwealth to prove its case beyond a reasonable doubt. The defendant walks in here presumed innocent, and the burden is on the Commonwealth to establish his guilt in the commission of this crime. That is their burden.

"If you feel that their testimony does not substantially do that, based on the credibility of the wit-

nesses, *then you are not required to bring in a conviction.** On the other hand, if you have a real doubt as to the guilt of this defendant, a substantive doubt, that a reasonable man or woman might have, then you can stop there."

In other words, the jury could have found defendant guilty if they had any doubt—*guilt beyond a reasonable doubt was not required.*

The Commonwealth contends that appellant's failure to take an exception to the charge prevents our consideration of any errors therein. Because of fairness to all the parties to the litigation and the speedy administration of trials and of Court business, it is a well established *general rule* that an appellate Court will not reverse (1) on a point (a) *where no exception was taken* by appellant (*Commonwealth v. Stowers,* 363 Pa. 435, 437, 70 A. 2d 226; *Commonwealth v. O'Brien,* 312 Pa. 543, 168 Atl. 244; *Commonwealth v. Donough,* 377 Pa., supra (page 53)); *Leech v. Jones,* 421 Pa. 1, 2, 218 A. 2d 722; *Millili v. Alan Wood,* 418 Pa. 154, 156, 162, 166, 209 A. 2d 817; *Patterson v. Pittsburgh Railways Co.,* 322 Pa. 125, 185 Atl. 283; *Commonwealth v. Scott,* 284 Pa. 159, 162, 130 Atl. 317); or (b) to which *only a general exception was taken* (*Commonwealth v. Smith,* 374 Pa. 220, 225, 97 A. 2d 25; *Enfield v. Stout,* 400 Pa. 6, 14, 161 A. 2d 22; *Spitzer v. P.T.C.,* 348 Pa. 548, 550, 36 A. 2d 503; *Ellsworth v. Lauth,* 311 Pa. 286, 290, 166 Atl. 855; *Medvidovich v. Schultz,* 309 Pa. 450, 453, 164 Atl. 338); or (2) *on a ground not raised in or by the Court below* (*Commonwealth v. Robinson,* 317 Pa. 321, 323, 176 Atl. 908; *White v. Moore,* 288 Pa. 411, 416-417, 136 Atl. 218).

*However, this general rule will not be applied* where there is basic and fundamental error which

* Italics, **ours.**

affects the merits or justice of the case, or, as some cases express it, offends against the fundamentals of a fair and impartial trial (see cases infra, and particularly *Commonwealth v. O'Brien*, 312 Pa., supra, and *Commonwelath v. Corrie*, 302 Pa. 431, 436, 153 Atl. 743), or deprives a defendant of " 'that fundamental fairness essential to the very concept of justice,' and, hence, denies him due process of law guaranteed by the Fourteenth Amendment": *Payne v. Arkansas*, 356 U.S. 560, 567; *Stroble v. California*, 343 U.S. 181, 191; *Lisenba v. California*, 314 U.S. 219; *Lyons v. Oklahoma*, 322 U.S. 596, 605; *U. S. v. Atkinson*, 297 U.S. 157, 160; *Silber v. U. S.*, 370 U.S. 717, 718;* *Commonwealth v. Smith*, 374 Pa., supra; *Commonwealth v. Donough*, 377 Pa., supra; *Commonwealth v. Robinson*, 317 Pa., supra; *Commonwealth v. O'Brien*, 312 Pa., supra; *Commonwealth v. Stowers*, 363 Pa., supra; *Commonwealth v. Scott*, 284 Pa., supra; *Commonwealth v. Corrie*, 302 Pa., supra. *Accord: Leech v. Jones*, 421 Pa., supra; *Enfield v. Stout*, 400 Pa., supra; *Spitzer v. P.T.C.*, 348 Pa., supra; *Patterson v. Pittsburgh Railways Co.*, 322 Pa., supra; *White v. Moore*, 288 Pa., supra; *Millili v. Alan Wood*, 418 Pa., supra; *Ellsworth v. Lauth*, 311 Pa., supra; *Medvidovich v. Schultz*, 309 Pa., supra. This exception to the general rule is always applied where a defendant's life or liberty is at stake. *Commonwealth v. Stowers*, 363 Pa., supra; *Commonwealth v. O'Brien*, 312 Pa., supra.

In *Commonwealth v. Robinson*, 317 Pa., supra, the Court said, (page 323): "And, of course, *basic and fundamental error*, such as here, will be considered *even if not pointed out in the court below:** White v. Moore, 288 Pa. 411. 'A man is not to be deprived of

---

* See also footnote on page 495 of *Miranda v. Arizona*, 384 U.S. 436.

his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial': Com. v. O'Brien, 312 Pa. 543, 546."

In *Commonwealth v. O'Brien,* 312 Pa., supra, the Court said (page 546) : "[The Court] . . . declined to reverse the case on that ground because defendant's counsel had taken *no exception** to the charge. In this we believe that learned court erred. A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial."

In *Commonwealth v. Stowers,* 363 Pa., supra, the Court said (page 437) : "Where there has been a failure to except to a judge's charge, *ordinarily** an appellate court will not pass upon alleged errors. However, in a *homicide case,*** where a defendant's life or liberty is at stake, and where defendant may have been deprived of a fair and impartial trial, or suffered manifest injustice, [because of basic and fundamental error] an appellate court will review the case notwithstanding the failure of defendant's counsel to take proper exceptions: Commonwealth v. Scott, 284 Pa. 159, 162, 130 A. 317; Commonwealth v. Corrie, 302 Pa. 431, 436, 153 A. 743."

In *Commonwealth v. Smith,* 374 Pa., supra, the Court expressed the rule at page 225 : "It first should be noted that only a general exception was taken to the charge and therefore the court can be reversed only for fundamental error therein."

---

* Italics, ours.

** Italics in original Opinion.

In *Patterson v. Pittsburgh Railways Company*, 322 Pa., supra, a unanimous Court, speaking through Justice (later Chief Justice) STERN, said (page 128): "Indeed, even in the absence of a general exception, the appellate court of its own motion may reverse because of basic and fundamental error: Schmitt v. City of Phila., 248 Pa. 124; Marlowe v. Travelers Insurance Co., 313 Pa. 430."

In *Millili v. Alan Wood*, 418 Pa., supra, where no exception was taken in the lower Court, it was held that even in the absence of a general exception the appellate Court of its own motion may reverse because of basic and fundamental error (pages 156, 162 and 166).

In *Leech v. Jones*, 421 Pa., supra, the Court said (page 2): "At the trial plaintiff-appellant took no exceptions to the charge.

"On such a record, in order to reverse the lower court's refusal to grant a new trial, because of a prejudicial charge, it is essential that there be basic and fundamental error. Enfield v. Stout, 400 Pa. 6, 161 A. 2d 22 (1960). 'Counsel may not remain silent, take no specific exception to the relevant portion of the charge which he thinks is prejudicial to his client, and later, after an adverse verdict, assign a particular portion of the charge as error.': Spitzer v. Philadelphia Transportation Company, 348 Pa. 548, 36 A. 2d 503 (1944)."

In *White v. Moore*, 288 Pa., supra, the Court said (pp. 416-417): "The rule that this court will not reverse on grounds not considered by the court below but raised for the first time on appeal, will not be applied where there has been some basic or fundamental error seriously affecting the merits of the case. Thus in Provident Life & Trust Co. v. Phila., 202 Pa. 78, 81, this court said, (page 81): 'Where there has been a fair and careful trial, an objection raised for

the first time in an appellate court should not lead
to a reversal unless it is a serious one and affects
the merits: Knapp v. Griffin, 140 Pa. 604; Jaffray
v. Frothingham, 148 Pa. 213; Krepps v. Carlisle, 157
Pa. 358; Halfman v. Penna. Boiler Ins. Co., 160 Pa.
202.' And in Sikorski v. Phila. & Reading R.R. Co.,
260 Pa. 243, we said in an opinion by our present Chief
Justice (page 249): 'In fact, the proper maintenance
of the long established and just rule that a trial court
will not be reviewed on matters in no way called to its
attention, unless for basic and fundamental error im-
peratively calling for reversal, requires that the pro-
vision in question be so construed.' See also Stone
v. Stone, 277 Pa. 277, 278, and cases cited."

Considering the charge of the Court in its entirety,
as we must—*Commonwealth v. Whiting*, 409 Pa. 492,
187 A. 2d 563; *Commonwealth v. Chavis*, 357 Pa. 158,
53 A. 2d 96—we nevertheless believe that the follow-
ing portion of the Court's charge amounts to fundamen-
tal error: "If you feel that their testimony does not
substantially do that [prove guilt beyond a reason-
able doubt], . . . *then you are not required** to bring
in a conviction." This portion of the charge gave
the jury a right to find defendant guilty even when
they had a reasonable doubt, and consequently con-
stituted basic and fundamental and reversible error.

## Tacit Admission

Defendant, after denying that he had intercourse
with Mrs. Benton on the night in question, testified
in his own defense that Mrs. Benton was in the alley
*with his brother.* Arresting Officer Bennett, a witness
for the Commonwealth, was recalled to the stand and,
over objection, was permitted to testify that at the
time of the arrest defendant did not at any time speak

---

* Italics, ours.

about his brother or indicate that his brother was involved in the incident or in any of the crimes charged. Defendant contends that the Court thus permitted the Commonwealth to introduce what was in effect a tacit admission in violation of his Constitutionally-protected right against self-incrimination.

Generally speaking, a defendant's silence is construed as a tacit admission when facts are stated or an accusation made which he would reply to or deny if he were innocent. What is or is not a tacit admission is sometimes clear and sometimes uncertain and vague.

However, in *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 86, 223 A. 2d 296, this Court held that the tacit admission rule was no longer valid in Pennsylvania under the decision in *Miranda v. Arizona*, 384 U.S. 436. Since *Miranda v. Arizona* applies to all trials *commenced after June 13, 1966*, that decision would apply here. *Johnson v. New Jersey*, 384 U.S. 719. Contrary to the contention of the Commonwealth, the record shows that defendant was in legal custody when he was caught in the alley with Mrs. Benton and immediately arrested. *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765; *Escobedo v. Illinois*, 378 U.S. 478. If defendant's silence or his testimony is construed to be a tacit admission, which we believe it is not, the rebutting impeaching testimony of the arresting officer is inadmissible.*

---

\* The writer of this Opinion very strongly disagrees with the recent decisions of the Supreme Court of the United States and of this Court which in practical effect and in reality eliminate the confessions of dangerous criminals which are *voluntarily* made. These decisions rob the law-abiding public of adequate protection against criminals and, I believe, are not supported by any language of the Constitution or by prior decisions of the Supreme Court. Nevertheless, I consider it my binding duty to follow them, if they *expressly* cover the facts in any of the cases which are appealed to this Court.

Judgment of sentence is hereby reversed and a new trial is granted.

Mr. Justice Cohen and Mr. Justice Eagen concur in the result.

Mr. Justice Musmanno did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

I respectfully dissent from the view expressed in the majority opinion and in the result reached.

Assuming, arguendo, that the charge was erroneous, I do not believe that question is before us. Not having been raised or considered in the Court below, the error alleged was not of such substance and prejudice as to result in an unfair trial and a deprivation of justice. See: *Commonwealth v. Scoleri*, 432 Pa. 571, 248 A. 2d 295 (1968). Under the circumstances, I would affirm the Order of the Superior Court.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I disagree with the result reached by the majority in considering the alleged error in the charge. If counsel was of the view that the language used by the judge was less than clear and may have caused confusion in the minds of the jury members he should have made an appropriate request to the court for clarification. However, I consider the failure by counsel for appellant to object to this language, or request clarification, conclusive of this issue.

The proper functioning of our guilt-determining process neither requires nor assures a defendant an errorless trial. A defendant is, however, entitled to a fair trial free of such trial errors as his trial counsel timely sought to have corrected by calling them to the court's attention. Trial errors are made in the courtroom and it is there that the correction process should at least be *initiated*.

The defense may not successfully complain of trial errors for the first time *only* after the jury has returned a verdict of guilty, unless the errors were initially challenged at trial, and thereby preserved on appeal. The majority now—contrary to the whole course of modern trial procedure—encourages defense counsel to sit by silently without calling errors to the trial court's attention until *after* the guilty verdict is returned. In effect the majority's present approach places the appellate court in the role of a super-trial-defense counsel. Where counsel fails to call errors to the attention of the trial judge, the majority ignores that deficiency and assumes the function of protecting those failures by granting relief despite the silence of counsel at trial.

I suggest that the majority now not only approves and encourages such trial silence, but more tragically places a distinct premium upon such strategy. This may well become one of the frequently used techniques of trial counsel for obtaining a new trial—simply do not seek to have errors corrected before the jury retires to deliberate. See *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d 289 (1968).

Furthermore, as I have stated both in *Simon* and *Commonwealth v. Scoleri*, 432 Pa. 571, 248 A. 2d 295 (1968), I think the basic and fundamental error test used by the majority in the instant case is too vague and lends itself to inconsistent results. Surely, all must agree that the very first ingredient of a constitutionally acceptable rule of law is that it must be impartial and equal as applied to all who come within its principle. Yet a comparison of the error in the charge in this case with the denial of the right to the assistance of counsel in the *Scoleri* case indicates that this impartiality may be lacking. Such obvious and glaring lack of uniformity imperils the stability of this court's adjudication process, especially in the in-

stance where one defendant is afforded far less decisional protection and relief than another defendant similarly situated. I believe that the majority's decision to give Williams a new trial while denying relief to Scoleri does precisely that.

Therefore, I dissent.