UNITED STATES of America

v.

Joseph TAYLOR.

Crim. No. 69–163.

United States District Court,
E. D. Pennsylvania,
Criminal Division.

Sept. 23, 1971.

David N. Savitt, Philadelphia, Pa., for plaintiff.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

The defendant was convicted of selling stolen motor vehicles. His motions for a new trial and for judgment of acquittal now bring the matter before the court.

A review of the record reveals the following facts. On seven separate occasions defendant went to various junk dealers and bought automobiles of recent vintage which had been wrecked ostensibly beyond repair. At the same time, he obtained their titles. After buying a particular automobile from a junk dealer, defendant then came into possession of a new automobile of the same type, make, and color which had recently been reported stolen by its owner. Thereafter, defendant sold to a third person an automobile which contained the vehicle identification number of the wrecked automobile previously purchased. Upon closer inspection, however, it was found that the car which had been sold was not in fact the wrecked vehicle which had allegedly been repaired but was instead the automobile which had been stolen.

Able defense counsel has cited nine reasons in support of defendant's motions. We shall now consider each of these contentions in turn.

I. Was the evidence presented by the government against the defendant illegally obtained?

Defendant's first contention is that the search warrant in this case did not issue upon probable cause because its supporting affidavit did not state sufficient underlying facts.

■■ Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), sets forth the principles of law which govern the issuance of search warrants:

1. Probable cause must be determined by a neutral and detached magistrate, based upon facts and not the unsupported conclusions of complainant;

2. The magistrate's judgment is to be based upon a common-sense reading of the entire affidavit;

3. Probability, and not a prima facie showing of criminal activity, is the standard of probable cause;

4. Affidavits of probable cause are tested by much less rigorous standards then those governing the admissibility of evidence at trial;

5. A magistrate's determination of probable cause should be paid great deference by reviewing courts.

Here the affidavit in question was made by George Hatton, a detective of the City of Philadelphia. It sets forth that he and two other Philadelphia detectives were assigned to investigate the matters that led up to the request for the warrant. Specifically, the affidavit relates that the Philadelphia Police Department received a request from the National Auto Theft Bureau to investigate the circumstances surrounding the titling of a 1966 Chevrolet which had been totally wrecked in an accident. The detectives personally ascertained that a vehicle bearing its serial numbers was in the possession of Donald I. Davis, a Philadelphian, who had purchased it from the Marv Pollow automobile agency, Lansdowne, Pennsylvania.

The detectives then found that the vehicle's confidential serial number had been obliterated and another number, corresponding with the manufacturer's number on the door plate, had been stamped in its place. There was damage to the door plate and the assembly plant letter on the firewall did not correspond with the door plate letter. This car, and 19 others with similar case histories, had been bought by the agency from one Joseph Phillips.

In each instance, the automobile covered by the serial number in question had been in a serious accident and sold to a salvage yard from which it was pur-

chased either by Phillips or the defendant, Joseph Taylor. Through a comparison of the true numbers of the vehicles, it was ascertained that each had been stolen, the door plate number had been replaced, and an effort had been made to obliterate the confidential serial number.

The affidavit then alleges that an examination of other cars purchased by automobile dealers from Phillips, the defendant, and other named individuals, showed the alteration and substitution of serial numbers and the destruction or defacing of confidential numbers. Through tests performed by the Federal Bureau of Investigation, the true serial numbers of these vehicles were ascertained, the true owner located in most instances, and thus it was learned that the vehicles had been stolen. From this the complainant concluded that Phillips, the defendant, and the others named, were engaged in a conspiracy to traffic in stolen motor vehicles accomplished by defacing the true serial numbers of a vehicle and substituting other serial numbers obtained from wrecked and salvaged vehicles. As a part of this conspiracy, the persons named used dies to stamp and imprint the false serial numbers upon the stolen vehicles.

■■ Counsel for the defendant contends there is nothing in this affidavit which is incriminatory of the defendant, who operates an automobile repair business and for that reason purchases wrecked vehicles to obtain parts. I disagree. In the first place, the affidavit not only asserts that the defendant purchased wrecks, the serial numbers of which were later found to be on stolen cars, but also that he sold automobiles, on which numbers had been altered, and which subsequently proved to have been stolen. From these allegations the magistrate was justified in concluding that the defendant was probably engaged in criminal activity. Secondly, the affidavit does not relate that the defendant

is in the automobile business or set forth any of the matters pertaining to how that business is operated. When a magistrate is called upon to judge probable cause, he is not required to weigh matters of defense which will be introduced at trial to explain incriminatory evidence. The defendant is suggesting that in judging the magistrate's evaluation of this affidavit we should ignore certain parts of it and consider what remains in light of details of the defendant's business activities not of record before the magistrate. This would obviously be wrong.

■■ The fact that the affidavit also contains Detective Hatton's[1] conclusions as to the defendant's criminal activities does not make it defective. All the law requires is sufficient factual averments from which the magistrate can make an independent evaluation. In essence, Detective Hatton stated that the defendant, and other men, bought wrecked automobiles, sold stolen automobiles, and that scientific tests conducted by the Federal Bureau of Investigation revealed the obliteration of valid serial numbers and the substitution of numbers and number plates obtained from the wrecked automobiles. Tested in light of the principles set forth in *Spinelli*, the facts contained in this affidavit were sufficient to justify the issuance of the search warrant.

II. Was the defendant denied his constitutional right to be represented by the attorney of his choice?

Taylor's second contention is that he was forced to stand trial at a time when his attorney was physically unable to represent him and thus he was deprived of his constitutional rights.

The defendant was arrested on September 4, 1968, but was not indicted until May 20, 1969. He was arraigned on August 5, 1969, and trial was set for the following month. In September, it was continued until December 9, 1969. On

---

1. A policeman's knowledge of a suspect's reputation may be considered by a magistrate: United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 2081, 29 L.Ed. 2d 723 (1971).

that date, defendant advised the court that he wished to hire a new attorney because his then-counsel had suggested the entry of pleas of guilty. At the defendant's request, the case was continued so that the defendant could be represented by John Patrick Walsh, Esquire, a member of the Philadelphia Bar.

Subsequently, by agreement between the Assistant United States Attorney and Mr. Walsh, trial was set for April 20, 1970. Prior to that time, however, Mr. Walsh suffered a heart attack and was hospitalized from February 24 to March 21, 1970. On April 20, when the case was called for trial, the defense asked that it be continued until September. The trial judge, The Honorable Ralph C. Body, refused and listed the case for June 8, 1970. On that date, the defendant asked for a further continuance until September so that Mr. Walsh could represent him. It was stated to the court that Mr. Walsh, then 65, had been told by his physicians not to try any cases before September but that he fully expected to be able to participate in court work at that time.

The motion for the continuance was refused after the trial judge considered the fact that there was no assurance of Mr. Walsh's availability in September, the large number of government witnesses that had been subpoenaed, the fact that many were from out of state, the prior continuances, and the availability of Mr. Walsh's associate, David N. Savitt, Esquire, to represent defendant. No complaint is made about Mr. Savitt's conduct of the case, his preparations, his counsel, or trial strategy. In fact, the defendant's brief refers to him as "extremely competent trial counsel." The sole basis for defendant's complaint is that he wanted to be represented by Mr. Walsh and the court refused to grant him a continuance for that purpose.

■ An application for a continuance on account of the absence through sickness of an accused's attorney is addressed to the discretion of the trial court. Denial of such a continuance is not an abuse of discretion where it appears that able counsel is available, where the accused knew of his counsel's illness a reasonable time before trial and that from the nature of the illness he would be absent for a prolonged period, where there was ample opportunity to obtain other counsel and other counsel was in fact obtained, and where there was no showing of any injury to the accused. See Rolon Marxuach v. United States, 398 F. 2d 548 (1st Cir. 1968), cert. den. 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443; Franken v. United States, 248 F.2d 789 (4th Cir. 1957), cert. den. 355 U.S. 956, 78 S.Ct. 541, 2 L.Ed.2d 532; 22A C.J.S. Criminal Law § 484, pp. 98–99.

■ Desirable as it is that a defendant be afforded counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice, the availability of witnesses [2] and the other matters which Judge Body had before him.

III. Was it error for the trial judge to refuse defendant's motion for a separate trial?

■ Defendant's third contention is that by reason of the consolidation of charges and joint trial he was prejudiced. Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of offenses which are of the same or similar character. Rule 14 allows separate trials if it appears that a defendant will be prejudiced by a joinder of offenses. However, the burden of showing prejudice lies with the defendant: Higgins v. United States, 130 U.S. App.D.C. 331, 401 F.2d 396 (1968). Defendant maintains that prejudice occurred by the joinder of these charges because he was unable to testify in his own behalf on a number of these counts since silence on the other counts would

---

2. This was a nine-count indictment. Prior continuances had resulted in the unavailability of witnesses as to two of the counts.

be damaging to him. This same assertion was made prior to trial, but neither at that time nor since has the defendant indicated the possible nature of what such testimony would be. Of course, he does not have to, but his silence left the trial judge with an empty, unsubstantiated assertion. In view of the obvious prejudice to the government of trying seven separate cases and the great expenditure of court time, the defendant should have presented something more than a naked proposition.

The offenses charged in this indictment are all of the same character. The first count refers to an incident on December 22, 1967, and thereafter the succeeding counts to other offenses until September, 1968. Roughly there is one each month. The government's evidence showed that each offense was perpetrated in approximately the same way. The jury was made to understand, however, that it had to consider the evidence from each count separately to determine guilt or innocence. The fact that it did so is shown by one of the last incidents that took place during the trial. The jury retired at 11:05 A.M. to deliberate. Shortly after 6:00 P.M. Judge Body told the jury that it had deliberated long enough and that he would make arrangements for hotel accommodations during the night. The foreman suggested, however, that only one count of the indictment had not been decided upon and asked for additional time to see if the jury could reach a decision. (N.T. 675) This plainly indicates that the jury was considering the indictments separately.

■ To have granted defendant's motion would have been to place a fantastic burden on the government and the court. Seven separate juries would have had to be empanelled and seven separate trial dates would have had to be set. The possibility of prejudice to the defendant resulting from the joinder of offenses must be weighed against the prejudice to the overall administration of justice from separate trials: Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

IV. Did the government establish the qualifications of its expert witness and was the admissibility of his testimony error?

A government witness, Robert M. Zimmers, conducted tests and introduced evidence to show that certain dies found in the possession of the defendant were the same dies used to stamp new vehicle identification numbers on the stolen vehicles. The defendant contends that Mr. Zimmers had not received any formal education to enable him to perform this work and that there was only one other individual, trained by Mr. Zimmers, who knew anything about it. Therefore, defendant contends that Mr. Zimmers was a self-trained "expert" in a field that did not exist.

Mr. Zimmers has worked as a special agent of the Federal Bureau of Investigation for 28 years. His duties with the FBI are in the area of firearms and tool mark identification. In the instant case, he made microscopic comparisons between imperfections in the impressions found on the stolen vehicles and the impressions made by the dies found in defendant's possession. Just as it is possible to compare fingerprints, so Mr. Zimmers can compare metallic impressions.

■ It can hardly be said that Mr. Zimmers is untrained. He attended Ohio State University and holds a Bachelor of Science Degree in Chemical Engineering from the University of Cincinnati. He was trained by the FBI for approximately one year in the field of firearms identification and has been doing that kind of work on a continuing basis ever since. The same methods used for the comparison of two bullets to see whether they came from the same gun are used by Mr. Zimmers in his work with tool marks. The fact that he is a pioneer who has carried his work beyond the boundaries of his formal education does not mean his testimony should have been rejected nor does the unique quality of his skills. There is no rule which says an expert's opinion can only be received if there are other experts who have the

same abilities. Were the courts to adopt defendant's arguments, we would be denied scientific truths and would still be struggling with problems created by concepts long known to be false.

It was not error to admit Mr. Zimmers' evidence.

V. Did the trial judge err in charging the jury that if they found the defendant had recent possession of a stolen vehicle, they could infer that the defendant knew the vehicle was stolen?

 The statute defining the crime with which defendant was charged contains as an express element that the offender must know the motor vehicle was stolen. The trial judge charged the jury that possession of a stolen motor vehicle shortly after its theft, in the absence of a reasonable and sufficient explanation, will justify the inference that the possessor had knowledge that the vehicle was stolen. In giving this instruction, the Court followed a well-established principle of law: Rugendorf v. United States, 376 U.S. 528, 536–37, 84 S.Ct. 825, 830, 11 L.Ed.2d 887 (1964); United States v. Pounds, 323 F.2d 419 (3rd Cir. 1963). Nevertheless, defendant contends that the inference is unconstitutional because it cannot be said with substantial assurance that the inferred fact is accurate beyond a reasonable doubt or alternatively, the inferred fact cannot with substantial assurance be said to flow from the proved fact on which it is made to depend.

 The general teaching of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), is that a criminal presumption is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Recently, the Supreme Court of Pennsylvania, Commonwealth v. Owens, 441 Pa. 318, 271 A.2d 230 (1970), held that in view of Leary, the knowledge inference with respect to possession of a recently stolen pistol was unconstitutional.

 There are several reasons why Leary and Owens are not applicable in the instant case. Leary dealt with a statutory presumption that one who possessed marijuana did so knowing it had been illegally imported. The presumption was based on data more than 12 years old when Leary came before the Supreme Court. In the meantime, there had been vast changes in the extent and nature of marijuana use in the United States. Domestic production had greatly increased so that the Court concluded there was no justification in believing that one who possessed marijuana knew that it had been grown abroad. Thus, the presumption of guilty knowledge was not justified by the actual circumstances and was therefore constitutionally infirm. The Supreme Court reached the opposite result with regard to heroin in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), because it is not produced domestically and may not be legally imported. Thus, guilty knowledge of an illegal source could be inferred from possession of that drug.

In the case at bar, the presumption of guilty knowledge that arises from recent possession of stolen goods is not statutory in origin, but is a long recognized rule of common law. It is supported by good sense and every-day experience: United States v. Coppola, 424 F.2d 991, 993 (2d Cir. 1970). For centuries, unexplained possession of recently stolen property has been accepted as evidence of wrong-doing. As a permissible inference for the jury, it satisfies the requirements of due process: United States v. Johnson, 140 U.S.App.D.C. 54, 433 F.2d 1160, 1169 (1970). Leary does not change the long-established rule that a jury may infer guilty knowledge on the part of one in possession of recently stolen property: McAbee v. United States, 434 F.2d 361, 363 (9th Cir. 1970).

In Owens, the defendant was convicted of knowingly possessing a stolen

pistol, the only evidence of knowledge having been established by his possession. After a review of certain statistics, the Supreme Court of Pennsylvania determined that a substantial number of used guns, stolen and non-stolen are transferred in seemingly innocent circumstances. Among low income groups, the Court observed that 71 per cent of all used firearms were obtained from a friend or private party in 1968. This led to the conclusion that a stolen gun could pass freely from hand to hand, and that a possessor would have no way to know it was originally stolen.

The same is not true of automobiles. Each transfer of a motor vehicle involves an assignment of the title certificate, the application for a new certificate, the payment of taxes, and the notarization of signatures. The name and address of both transferor and transferee is recorded by the state for permanent reference. The possibility that a stolen automobile may be innocently acquired is kept to a minimum.

"Automobiles, like many other items, are not hawked on street corners. Because they are expensive, durable, and identifiable, they are usually bought from established dealers or others who can show some proof of their title to the property. Buyers should and generally do seek proof of title. Therefore, it is proper to infer that one possessing a recently stolen car did not haphazardly buy it on the street without knowledge of the theft. For the same reasons, it should be easier than in the *Leary* situation—where contraband was involved —for the defendant to support allegations that he acquired the property legitimately." United States v. Polk, 433 F.2d 644, 648 (5th Cir. 1970).

█ Moreover, in the instant case, there was ample evidence, and even comments by defense counsel, that defendant had altered the identification numbers of the stolen cars in his possession. Ordinarily, neither private parties nor dealers change these numbers, some of which are in secret, inacessible places. Pennsylvania law makes it a felony, pun-

ishable by a fine of $5,000. and imprisonment for up to 10 years to sell a vehicle with the knowledge that its serial numbers have been defaced or altered: Section 304, Pennsylvania Motor Vehicle Code, 75 P.S. § 304. The Code provides a means to obtain a valid title for cars with omitted, obliterated, or defaced serial numbers: 75 P.S. § 302. There was no indication that the defendant followed that procedure as to any of the vehicles in question. Therefore, the jury could have inferred knowledge that these cars were stolen not only from their being in the defendant's possession, but also from the fact that he had tried to obliterate the means by which they could be shown to be stolen vehicles and their true ownership established.

Under these circumstances, there was no error in this portion of the charges.

VI. Did the trial judge err in his charge to the jury concerning the definition of reasonable doubt?

█ Defendant maintains that the court's charge on reasonable doubt did not convey the law adequately, that the instructions confused the jury, and that prejudicial error resulted. I disagree.

The court charged:

What is a reasonable doubt? A reasonable doubt is such a doubt as would cause a reasonably prudent man to pause and to hesitate in a matter of the highest importance to himself. A doubt to be reasonable must be one which fairly strikes the conscientious mind and clouds the judgment. It is not such a doubt as one might conjure up out of nowhere merely for the purpose of escaping the consequences of an unpleasant verdict, but as the term itself implies, it is a doubt which is reasonable and which fairly arises out of the evidence. *It means a doubt which is substantial and not merely shadowy*. It does not mean a doubt arising out of sympathy for the defendant or out of anything other than a candid consideration of all the evidence presented. [Emphasis added] (N.T. 646–647)

The defendant argues that the charge is erroneous in that the law only requires a reasonable doubt, not a substantial doubt, in the minds of the jurors to acquit a defendant.

"Substantial" is defined by Black's Law Dictionary, 4th ed., 1968, as "real; not seeming or imaginary; not illusive." It is a term which is susceptible of different meanings according to the circumstances: 83 C.J.S. p. 762.

In Commonwealth v. Williams, 432 Pa. 557, 248 A.2d 301 (1968), the Supreme Court of Pennsylvania considered the following charge:

> If you feel that [the Commonwealth's] testimony does not substantially do that [i. e. prove defendant guilty beyond a reasonable doubt], *then you are not required to bring in a conviction.* On the other hand if you have a real doubt as to the guilt of this defendant, a substantive doubt, that a reasonable man or woman might have, then you can stop there. (Italics added by Supreme Court.)

Reversible error was found in the phrase "then you are not required to bring in a conviction," because the jury was given the right to find defendant guilty even if it had a reasonable doubt. However, the use of "substantially" and "substantive" was not criticized.

In United States v. Evans, 239 F.Supp. 554 (E.D.Pa.1965), aff'd 411 F.2d 591 (3rd Cir. 1969), this court cited with approval the following charge from the Manual on Uniform Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 567:

> A reasonable doubt means a doubt that is based on reason and must be *substantial* rather than speculative. (Emphasis mine)

In the context of the charge in the instant case, "substantial" is used to designate that which is real rather than shadowy, that which is not illusory. The trial judge did not use "substantial" to indicate a "great amount" and did not lessen the burden upon the government to establish guilt beyond a reasonable doubt. Accordingly, there was no error.

The court also instructed:

> . . . The United States is not required to prove its case beyond all doubt. It has been said with a great deal of persuasion that there is some doubt at least about almost everything, but there is that high duty upon the prosecution of proving its case beyond a reasonable doubt. *If your mind is fairly satisfied* of the facts on the evidence, as much so as would induce a man of reasonable firmness and judgment to take the facts as true and to act upon them in a matter of the highest importance to himself, it would be sufficient to rest a verdict upon them. If after an entire comparison and consideration of the evidence your minds are in a condition that you cannot say that you feel an abiding conviction that the accused is guilty then you must find him not guilty. [Emphasis added] (N.T. 647–648)

■ The defendant contends that if a jury is only "fairly satisfied" of guilt it has not been convinced beyond a reasonable doubt. This would be true if "fairly" is construed to mean "moderately." However, here "fairly satisfied" plainly means to have become satisfied in a fair way, in a way that was free of bias or prejudice.

More than one hundred years ago, the Supreme Court of Pennsylvania in Commonwealth v. Drum, 58 Pa. 9 (1868), approved the following charge on reasonable doubt:

> If the mind be *fairly satisfied* of a fact, on the evidence—as much so as would induce a man of reasonable firmness and judgment to take the fact as true, and to act upon it in a matter of importance to himself, it would be sufficient to rest a verdict upon it. (Emphasis added.)

*Drum* has been cited with approval recently in Commonwealth v. Collins, 440 Pa. 368, 269 A.2d 882 (1970), and United States v. Evans, supra. See also Laub's

Pennsylvania Trial Guide, section 618.2, p. 277.

There is no merit in defendant's contention.

VII. Did the trial judge err in his charge to the jury by defining a crime under the Penal Code of Pennsylvania which was not applicable to the case?

■ Defendant next contends that he was prejudiced because the trial judge charged the jury on a Pennsylvania crime, allegedly inapplicable to the instant case. The reason for the charge was to clarify a misimpression left with the jury by defense counsel. In his closing argument, he had stated that there was not necessarily anything criminal in stamping out an automobile's vehicle identification number and replacing it with another.

In response to that comment the court stated:

. . . some reference has been made to defacing numbers on motor vehicles, and I have to clear this up with you . . . by reading to you under the law of Pennsylvania as found in 75 Purdon's Digest, Section 301, which says:

It shall be unlawful to have possession of or to operate a motor vehicle, trailer, or semi-trailer on which the manufacturer's serial number has been omitted, obliterated or defaced; provided, however, that this shall not affect those persons authorized by law to have in their possession vehicles on which the manufacturer's serial number has been omitted, obliterated or defaced.

That, however, is the law of Pennsylvania and we are not concerned with it so far as charging this defendant with that . . . I just want to call to you the fact that it is illegal if the facts fit those circumstances. (N.T. 653–654)

Because it was the defense which erroneously represented the law of Pennsylvania and because the trial judge spe-

cifically cautioned the jury not to consider the cited law with respect to the charges against the defendant, I find no error.

VIII. Did the trial judge err in re-refusing defendant's request for special instruction relating to Interstate Commerce?

The defendant in his points for charge, Number 19, requested the following instruction:

In order to find defendant guilty of any of the counts it is necessary that the government prove beyond a reasonable doubt that all of the vehicles involved allegedly sold by the defendant were moving as or were part of Interstate Commerce at the time of the alleged sale. The mere fact that the vehicles may have been previously removed from another state is not sufficient to meet the government's burden of proof that the automobiles were in Interstate Commerce.

I believe that the trial judge covered the defendant's point, albeit in different language. The jury was told:

Now, then, the last of the three items that must be proved by the government is the vehicle must be taken across state lines. It must arise from one state and come into another. You must find from the evidence the vehicle did originate in X state and come to Pennsylvania. Now, then, whether or not it is still interstate commerce and how long is for you to determine, but so far as this law is concerned, if it stays only a reasonable time before it is moved again, it is still in my opinion within the rule of being in interstate commerce, and it had to come to rest some place or other. But the question is, how long? As long as it has been moved from one state to another, from New Jersey to Pennsylvania, Massachusetts to Pennsylvania, New York to Pennsylvania, and then moved again after that, it is my opinion, if you so find the facts to be, it will still be interstate commerce. (N.T. 645)

Whether or not stolen property is in interstate commerce, or has come to rest within a state and lost its interstate character is one of fact for the jury. There are no hard and fast rules for determining when an interstate journey has come to an end, or when an article which has made such a journey loses its interstate character. So far as an automobile is concerned, it does not necessarily end when transportation to another state has been completed. The sale of the vehicle may be an incident of the theft and transportation and so tied up with them that it constitutes the final step in an unlawful scheme. However, an automobile's being a part of interstate commerce does not continue indefinitely after its transportation ends, and when it is acquired by someone in no way connected with the theft and transportation, its interstate character may be considered terminated. While the lapse of time between the interstate journey and the illegal sale is to be considered, equally important is what is done to the car in the interim. Powell v. United States, 410 F.2d 710, 713 (5th Cir. 1969)

In the instant case, the trial judge correctly told the jury that the government was required to prove that the vehicles in question had crossed state lines and that an unreasonable length of time had not elapsed prior to the time that the defendant sold them. The facts in this matter are strikingly similar to those in *Powell* where the stay of an automobile in a body shop for more than a month prior to its illegal sale was held to be part of the interstate journey intended to end with the sale itself. Accordingly, it was proper for the jury to consider the time during which the defendant held the stolen vehicles so as to change their identification numbers as a part of the interstate journey.

The longest period between interstate transport and sale, as set forth in the indictment, was three and one-half months. The majority of the counts, however, were concerned with approximately one month periods. The Court's charge correctly submitted to the jury the question of whether an unreasonable length of time had elapsed so that the interstate journey had ended. Under the circumstances of this case, the jury was warranted in finding the vehicles remained in interstate commerce even though in the one instance three and one-half months had gone by.

I find that the trial court's charge was similar enough to the point presented by defendant so as to preclude error. Refusal of defendant's points for certain instructions is not error where the substance of that which was requested was included in the charge: Sleek v. J. C. Penney Co., 208 F.Supp. 207 (W.D. Pa.1962). Accordingly, there is no merit to defendant's contention.

IX. Did the government fail to present sufficient evidence to sustain the verdict on any of the counts involved in the bill of indictment?

The trial of this case took six days before a judge and a jury, during which time there were 34 different witnesses on the stand, some of whom were recalled. Each count was taken separately and the government introduced evidence to sustain its allegations in each count. In each instance, the government introduced the junk dealer who identified various automobiles which he had in his possession and which he had sold to the defendant, Joseph Taylor. The dealer identified the defendant as being the man with whom he had dealt. There was also testimony as to the vehicle identification number of the junk car as well as a description of it by make, color and year. Testimony of the owners of motor vehicles similar to that of the junk cars sold to defendant stated that the automobiles were in their possession when stolen. In all cases the vehicles were stolen while they were outside of the state of Pennsylvania. Evidence was then produced showing how the particular motor vehicle which was eventually recovered was sold by the defendant. Investigations revealed that

the vehicle identification number of the recovered vehicle was the same as that of the junk car. The confidential vehicle identification number which had not been obliterated or changed was that of the automobile which had been reported stolen out of state. Dies and markers recovered in the defendant's shop were the ones used to make the new vehicle identification numbers on the stolen cars and those numbers were placed over the obliterated ones which the manufacturer had originally put on.

We believe the government sustained its burden with respect to each and every count.

Since none of the defendant's contentions have been shown to have any merit his motions for a new trial and for judgment of acquittal will be denied.