**UNITED STATES of America**

**v.**

**Cyril J. NIEDERBERGER, Appellant.**

**No. 77–1575.**

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1978.

Decided May 5, 1978.

64

Thomas A. Livingston, Dennis J. Clark, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., Craig R. McKay, Edward J. Schwabenland, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before ROSENN and HIGGINBOTHAM, Circuit Judges, and BARLOW, District Judge.*

* George H. Barlow, United States District Judge for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

BARLOW, District Judge.

Cyril J. Niederberger, an employee of the Internal Revenue Service (I.R.S.), appeals his conviction on six counts of a ten-count indictment. The indictment charged Niederberger with accepting illegal gratuities from Gulf Oil Corporation (Gulf) in the form of five golfing trips paid for by Gulf.[1] Each golf trip provided the predicate for two counts in the indictment, the odd-numbered counts alleging violations of 18 U.S.C. § 201(g) (1970)[2] and the even-numbered counts alleging violations of 26 U.S.C. § 7214(a)(2) (1970).[3]

Niederberger seeks reversal on a variety of grounds. The principal arguments, however, are addressed to the trial court's refusal, first, to grant Niederberger's motion for severance; second, to compel the Government to provide use immunity for certain potential defense witnesses; third, to dismiss the indictment on the basis of duplicity; fourth, to dismiss the indictment for its failure to allege facts which constitute a federal offense; and, fifth, to strike the testimony of a prosecution witness who, prior to trial, had destroyed the rough notes upon which he based his testimony. Additionally, Niederberger contends that the evidence presented by the prosecution was insufficient to support a judgment of conviction.

However, following our careful consideration of all the issues raised by the appellant, we must affirm the judgment of the trial court in all respects.

The facts, briefly summarized are as follows: During the period between 1971 and 1974, Niederberger was employed by the I.R.S. in its Pittsburgh office as a large case manager. This position required Niederberger to supervise a group of revenue agents assigned to audit certain corporate income tax returns filed by Gulf. Among Niederberger's responsibilities were the development and final approval of the audit plan, which is a detailed outline of the specific procedures to be utilized during the course of a particular audit. During the development of an audit plan, Niederberger was empowered to make all final decisions regarding the scope and depth of the areas of corporate taxation which were to be reviewed in the audit.

Further, in his position as the large case manager for Gulf, Niederberger had occasion to supervise the audits of Gulf's tax returns for the years 1960 through 1970 inclusive. Following the completion of a particular year's audit, representatives of Gulf would confer with Niederberger's staff to discuss the tax adjustments which the revenue agents determined were required by the audit. In each instance Gulf agreed to pay the proposed additional assessment without resort to available administrative appellate procedures.

During the same period that Niederberger was serving as the case manager for the Gulf audits, he accepted from Gulf—and at Gulf's expense—several golfing junkets at various resorts. More precisely, in January of 1973, Niederberger spent four days at

---

1. The jury found the defendant not guilty of Counts I and II, which concerned a trip to Pompano Beach, Florida. The defendant was also acquitted of Counts IV and VI. These counts involved trips taken by Niederberger to Absecon, New Jersey, and Pebble Beach, California.

 On March 29, 1977, Niederberger was sentenced to six months in jail, to be followed by a five-year period of probation. In addition, he was fined $5,000.

2. 18 U.S.C. § 201(g) provides:

 Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him.

3. 26 U.S.C. § 7214(a)(2) provides:

 Any officer or employee of the United States acting in connection with any revenue law of the United States—

 . . . . .

 (2) who knowingly demands other or greater sums than are authorized by law, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty.

the Doral Country Club in Miami Beach, Florida, in the company of Mr. John F. Fitzgerald who, at that time, was the Manager of Federal Tax Compliance for Gulf. Niederberger's entire bill was transferred to Fitzgerald's account, which was subsequently charged to Fitzgerald's American Express card. This trip provided the basis for Counts III and IV of the indictment.

In August and September of 1973, Niederberger and his wife spent four days at the Seaview Country Club in Absecon, New Jersey, in the company of, among others, Mr. Fred W. Standefer, Gulf's Vice-President of Tax Administration. The Niederbergers' expenses at Seaview were billed to Mr. Arthur V. Harris, who listed his billing address as the Gulf Oil Building, Pittsburgh, Pennsylvania. Counts V and VI of the indictment embody this trip.

In April of 1974, Niederberger spent four days at the Del Monte Lodge in Pebble Beach, California, in the company of both Fitzgerald and Standefer. Again, Fitzgerald charged Niederberger's bill to his American Express card. Counts VII and VIII of the indictment reflect this trip.

Two months later, in June of 1974, Niederberger and his wife were guests of Fitzgerald for five days at the Desert Inn and Country Club in Las Vegas, Nevada. This trip underlies Counts IX and X of the indictment.

## SEVERANCE

Prior to trial and pursuant to Fed.R. Crim.P. 14,[4] Niederberger moved unsuccessfully to limit the trial below to those offenses charged in any two counts contained in the indictment which had, as their common denominator, the location of one of the five golfing vacations. He urges on this appeal that the joinder of all ten counts in the indictment substantially prejudiced his right to a fair trial in that the jury was presented with evidence relating to all five golfing trips and could not, therefore, properly separate and distinguish the evidence with respect to each individual count.

Initially, it is settled that a district court's disposition of a Rule 14 severance motion will not be disturbed in the absence of a clear showing of an abuse of discretion. *United States v. Somers*, 496 F.2d 723, 730 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). The burden placed upon the appellant here to demonstrate such abuse is a heavy one. *Id.; see United States v. Rosa*, 560 F.2d 149, 154 (3d Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977) (severance of defendants).

Moreover, joinder of offenses in one indictment is expressly permitted by Fed.R. Crim.P. 8(a).[5] Here the joinder was clearly permissible since the crimes charged were all of the same or similar character. Thus, our inquiry must focus on whether the record below suggests that, by virtue of the joinder, the appellant's right to a fair trial was sufficiently prejudiced so as to warrant the relief provided by Rule 14.

The obvious purpose of Rule 8(a)'s liberal joinder provision is to promote judicial and prosecutorial economy by the avoidance of multiple trials. *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). To accept the appellant's view here would clearly violate the intent of Rule 8(a) in that his motion implicitly proposed that at least two and perhaps as many as five separate trials would be required to prosecute all ten counts of the indictment. Given the obvious burden

---

**4.** Rule 14 provides in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

**5.** Rule 8(a) provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

imposed upon the prosecution and the trial court in terms of both time and expense, such a result would be as intolerable as it is unnecessary. That is especially true here because the evidence in any subsequent trial would be largely duplicative of that presented in the initial trial. *See United States v. Taylor*, 334 F.Supp. 1050, 1056 (E.D.Pa.1971), *aff'd* 469 F.2d 284 (3d Cir. 1972).

Furthermore, no substantial prejudice has been demonstrated. The appellant merely asserts that the jury would be incapable of sifting through and separating the evidence and applying it to the appropriate counts of the indictment. This assessment is belied by the fact that the jury's verdict acquitted Niederberger of four of the ten counts. That result establishes beyond question that the jury was capable of evaluating the evidence relating to each separate count.

 Accordingly, we are satisfied that the joinder of offenses in a single indictment failed, in any sense, to infringe upon Niederberger's right to a fair trial, and consequently we find no abuse of discretion in the district court's resolution of the Rule 14 application.

## IMMUNITY FOR PROSPECTIVE DEFENSE WITNESSES

Niederberger's second contention is directed to the district court's refusal to require the Government to seek use immunity, pursuant to 18 U.S.C. § 6002,[6] for the proposed defense witnesses, Fitzgerald and Standefer, the two Gulf employees instrumental in providing Niederberger with the gratuities underlying the indictment. The appellant maintains that without a grant of immunity both men would have refused to testify on his behalf. Thus, Niederberger

argues, the failure of the court to compel a grant of immunity denied him his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process.

 The rule in this Circuit is clear; a trial court has no authority to provide use immunity for a defense witness. *United States v. Morrison*, 535 F.2d 223, 228–29 (3d Cir. 1976); *United States v. Berrigan*, 482 F.2d 171, 190 (3d Cir. 1973).[7] Similarly, except in an extraordinary circumstance which was not present below, a trial court cannot compel the Government to offer such immunity to a prospective witness. *Morrison, supra*, 535 F.2d at 229.

 Moreover, there was no affirmative showing, as required by § 6002, that either Fitzgerald or Standefer would have refused to testify if called as defense witnesses. Accordingly, we conclude that the trial court's denial of the immunity request did not offend defendant's Fifth or Sixth Amendment rights.

## DUPLICITOUSNESS

The indictment charges, in the odd-numbered counts, that Niederberger did "accept, receive and agree to receive a thing of value" from Gulf. In the even-numbered counts, Niederberger is alleged to have received a "fee, compensation and reward" from Gulf. The appellant insists that, because of the conjunctive phrasing of the indictment, he is charged with three distinct offenses in each count, in violation of Fed.R.Crim.P. 8(a).[8] Thus, Niederberger contends, the trial court erred when it denied his motion to dismiss the indictment for duplicitousness.

 In *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975), we defined

---

6. 18 U.S.C. § 6002 makes available use immunity for a witness who

 refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

 (1) a court or grand jury of the United States
 . . . ..

7. The function of the trial court is limited to determining whether a request for immunity made by the government is in accord with the statutory procedure. *See Ullmann v. United States*, 350 U.S. 422, 433–34, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

8. For the text of Rule 8(a), see n.6, *supra*.

duplicity as "the joining in a single count of two or more distinct and separate offenses". We note that although the indictment is framed in the conjunctive, the statutes forming the bases for the indictment are worded in the disjunctive.[9] Nonetheless, this apparent inconsistency presents no difficulty, for it is settled law that where a statute denounces an offense disjunctively, the offense may be charged conjunctively in the indictment. *See, e. g., United States v. Gunter,* 546 F.2d 861, 868–69 (10th Cir.), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977); *United States v. Malinowski,* 347 F.Supp. 347, 352 (E.D.Pa.1972), aff'd 472 F.2d 850 (3d Cir.), *cert. denied,* 411 U.S. 970 (1973). Moreover, guilt may be established by proof of any one act named disjunctively in the statute. *See Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Gimelstob,* 475 F.2d 157, 163 (3d Cir.), *cert. denied,* 414 U.S. 828, 94 S.Ct. 49, 38 L.Ed.2d 62 (1973); *United States v. Pauldino,* 443 F.2d 1108, 1112 (10th Cir.), *cert. denied,* 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971).

■ Therefore, we must find the appellant's argument grounded on duplicitousness to be meritless.

### QUID PRO QUO

Prior to trial, Niederberger moved to dismiss the indictment on the grounds that the charges set forth in the bill did not allege facts sufficient to constitute a criminal offense under the illegal gratuity statutes, 18 U.S.C. § 201(g) and 26 U.S.C. § 7214(a)(2). Niederberger maintains here that the trial court's denial of that motion constitutes plain error.

The statutes proscribe the receipt by a public official of a gratuity, except where specifically permitted under the law, for the performance of an official act or duty. The appellant contends that the language of each statute injects a requirement of a quid pro quo; but appellant then goes much further and asserts that the indictment must allege that Niederberger received the golfing trips in return for some specific, identifiable act which he performed or was to perform in the future.

Viewing § 201 in its entirety, it is apparent that the elements of the offense which Niederberger claims should be alleged in an indictment which charges a violation of § 201(g) are found in § 201(c)(1), one of the bribery sections of the statute. Section 201(c)(1) subjects a public official to prosecution if he

corruptly . . . accepts, receives, or agrees to receive anything of value for himself . . . in return for:

(1) being influenced in his performance of any official act . . ..

It is clear, then, that § 201(c)(1) requires as one of its elements a quid pro quo. In fact, we find this to be the primary distinction between subsections (c)(1) and (g). Support for this view is found in *United States v. Brewster,* 165 U.S.App.D.C. 1, 506 F.2d 62 (1974), where the court, analyzing the differences between subsections (c)(1) and (g), held that "[t]he bribery section [(c)(1)] makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved". *Id.,* at 11, 506 F.2d at 72.[10]

Thus, we find it unnecessary for the Government to allege in an indictment charging a § 201(g) offense that a gratuity received by a public official was, in any way, generated by some specific, identifia-

---

9. The texts of the pertinent statutes appear in notes 1 and 2, *supra.*

10. Further support of this conclusion is found in cases wherein courts have considered the elements of an 18 U.S.C. § 201(f) offense—forbidding the *payment* of a gratuity to a public official—and have concluded that a quid pro quo is not among them. *See, e. g., United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); *United States v. Umans,* 368 F.2d 725, 729–30 (2d Cir. 1966), *cert. dismissed,* 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967); *United States v. Irwin,* 354 F.2d 192, 197 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). It follows that if proof of a quid pro quo is not required under § 201(f), it need not be established in a § 201(g) prosecution.

ble act performed or to be performed by the official. A quid pro quo is simply foreign to the elements of a subsection (g) offense. What is proscribed, simply put, is a public official's receipt of a gratuity, to which he was not legally entitled, given to him in the course of his everyday duties, for or because of any official act performed or to be performed by such public official, and he was in a position to use his authority in a manner which could affect the gift-giver. *See, United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir. 1976); *Brewster, supra,* 165 U.S. App.D.C. at 11, n.26, 506 F.2d at 72, n.26.

■ In light of the foregoing, and because of the obvious parallelism in the proscriptions of § 201(g) and § 7214(a)(2) offenses, we hold that § 201(g) does not require an allegation or proof of a quid pro quo, nor does § 7214(a)(2). Thus, we find the indictment sufficiently alleged acts made criminal by the illegal gratuity statutes.

## SUFFICIENCY OF THE EVIDENCE

At the conclusion of the Government's case, the defendant moved unsuccessfully for acquittal, asserting an insufficiency of evidence. On this appeal, Niederberger has renewed the following two arguments presented below in support of that motion: (1) the Government did not prove that Niederberger received or agreed to receive a gratuity in Pittsburgh, as alleged in the indictment; and (2) the Government failed to prove that Gulf paid a gratuity to Niederberger, again as alleged in the indictment.

■ In reviewing the sufficiency of the evidence adduced at trial, we may not disturb a verdict if the evidence, when viewed in the light most favorable to the Government, could justify a jury finding of guilt beyond a reasonable doubt. *Government of the Virgin Islands v. Bradshaw,* 569 F.2d 777, 779 (3d Cir. 1978); *Government of the*

*Virgin Islands v. Petersen,* 507 F.2d 898, 900 (3d Cir. 1975).

Counts 3, 5, 7 and 9 allege that Niederberger "at Pittsburgh . . . did unlawfully and knowingly accept, receive, and agree to receive things of value" from Gulf in violation of 18 U.S.C. § 201(g). Counts 8 and 10 allege that Niederberger "at Pittsburgh . . . . did unlawfully and knowingly, receive a fee, compensation, and reward" from Gulf in violation of 26 U.S.C. § 7214(a)(2). As his first contention, the appellant maintains that since venue must lie in the district where the criminal acts occurred,[11] and, since the Government failed to introduce evidence that any of the alleged criminal acts were committed in Pittsburgh, the charges in the indictment were not proven and, accordingly, the jury verdict must be overturned.

We have heretofore determined that although each count of the indictment is phrased in the conjunctive, the prosecution need only prove one of the three acts alleged in each count. Common sense suggests that when Niederberger boarded an airplane in Pittsburgh to begin his round-trip flights, the tickets for which were ultimately paid for by Gulf, to Miami (Count III), Absecon (Count V), Pebble Beach (Counts VII and VIII), and Las Vegas (Counts IX and X), he had accepted and received a thing of value or a reward in Pittsburgh.

■ Moreover, in framing his venue argument, the appellant appears to have overlooked 18 U.S.C. § 3237(a). This statute provides:

[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

---

11. The appellant bases this argument on language found in the venue provisions of the Sixth Amendment ("The accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . .") and Fed.R.Crim.P. 18 ("Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed.").

The above language clearly indicates that the acts which began in Pittsburgh, even though it may be argued that the acts were completed elsewhere, are sufficient to establish venue in the Western District of Pennsylvania for those activities charged in the indictment which took place in other locations. *See United States v. Barnard,* 490 F.2d 907 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

 In his second challenge to the sufficiency of the evidence, Niederberger argues that the Government failed to prove that the Gulf employees who had utilized their credit cards to cover Niederberger's expenses on each of the golfing trips were ever reimbursed by Gulf for their expenditures. In order to properly consider this argument, the testimony of Government witnesses Cox, Boyd, Ferris, and Hobron must be reviewed.

The testimony of Cox, the manager of accounting at Gulf, concerned the procedures employed at Gulf in situations where an employee, who had incurred expenses on Niederberger's behalf, sought reimbursement. The witness testified that the travel and expense vouchers submitted by these employees, upon which Niederberger's name appeared—all of which had been admitted into evidence—reflected an expense of Gulf.

Boyd, an I.R.S. security inspector, summarized these expenses incurred by Gulf on behalf of Niederberger as established by the vouchers. Boyd testified that, based on his examination of the vouchers, Gulf expended over $7000. on Niederberger between 1965 and 1975, which included reimbursements for golfing trips to Miami, Las Vegas, and Absecon.

Ferris, Standefer's secretary, described the contents of various vouchers which had been approved for reimbursement. Among them were expenditures for Niederberger's round-trip airplane tickets, hotel and golf charges, and restaurant checks from the golfing resorts in Miami, Absecon, Pebble Beach, and Las Vegas.

Finally, there is the testimony of Hobron, an I.R.S. investigator, who conducted an extensive interview of Niederberger prior to the return of the indictment. Hobron testified that during the course of this interview Niederberger admitted that he was aware that Gulf arranged and paid for the trips to Miami, Absecon, Pebble Beach, and Las Vegas.

The cumulative effect of this testimony leads us to the inescapable conclusion that the Government provided more than sufficient evidence to permit a jury to find that Gulf paid for Niederberger's various golfing trips.

## JENCKS MATERIALS

At trial, Hobron, the criminal investigator for the I.R.S. who had interviewed Niederberger, testified—as we have previously noted—as to certain admissions made by Niederberger regarding his receipt of gratuities from Gulf. During cross-examination, Hobron revealed that his rough notes of the interview had been turned over to his superiors after he had reduced the notes to a typewritten report. Thereafter, the Government informed the court that the notes had been destroyed pursuant to I.R.S. administrative guidelines.

Maintaining that these rough notes were materials which should have been supplied to him under the Jencks Act, 18 U.S.C. § 3500, the defendant thereupon moved for a mistrial by reason of the Government's failure to preserve and produce the rough notes. Niederberger argued that without the rough notes the defense was denied an effective cross-examination of the I.R.S. investigator. Thus, the investigator's testimony should have been stricken. Further, he urged, because of the impact on the jury of the incriminating testimony, and the obvious prejudice to the defense which could not be cured by an instruction from the court, a mistrial was the only appropriate remedy. The trial court denied the motion,

concluding that at the time of the trial below the law in the Third Circuit did not require the preservation and production of such rough notes.[12]

The law of this Circuit with respect to the preservation and production of rough interview notes was established in *United States v. Vella,* 562 F.2d 275 (3d Cir. 1977) (per curiam). In *Vella,* relying on the reasoning advanced in *United States v. Harrison,* 173 U.S.App.D.C. 260, 524 F.2d 421 (1975), we held that:

> the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the appellant under the rule of *Brady v.*

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Jencks Act. *Vella, supra,* 562 F.2d at 276.

■ However, despite the requirements of *Vella,* on the record before us it is our view that even without the I.R.S. investigator's testimony the Government's evidence established a sufficient basis for the jury to reach its verdict.[13] This conclusion, coupled with the absence of any suggestion that the destruction of the notes under I.R.S. administrative procedure was performed in bad faith, requires a finding that if there were error below it was harmless. *Vella, supra,* 562 F.2d at 276.

The remaining allegations of error advanced by the appellant are without merit and must be rejected.[14]

---

12. The trial was conducted between February 17th and February 25th, 1977. The trial court was correct in noting that at that time the preservation of rough notes was not required.

13. The record reveals that Hobron's testimony concerned certain admissions made by Niederberger and established two particulars which the jury could have accepted as factual: 1) Niederberger believed that Gulf had arranged and paid for each of the golfing trips charged in the indictment; and 2) Niederberger knew his acceptance of those free vacations was illegal. While we view Hobron's testimony as damaging, we do not regard it as critical to a successful prosecution.

In addition to Hobron's testimony, the government introduced additional testimony as well as documentary evidence from which the jury could have found, beyond a reasonable doubt, that not only did Niederberger permit Gulf employees to pay his expenses at resorts in Miami, Absecon, Pebble Beach, and Las Vegas, but also, that Gulf itself, through its reimbursement of their employees, actually paid those expenses.

The Government's witnesses, Vendrell, Conover, Nelson and Alderfer, established that Niederberger was a guest, during the time periods specified in the indictment, at the Doral Country Club, the Seaview Country Club, the Del Monte Lodge and the Desert Inn. Each also testified that Niederberger's expenses were charged to credit cards of Gulf employees.

Sandra Ferris, Standefer's secretary at Gulf, testified to the contents of employee expense vouchers which detailed the expenses of Gulf employees, including round-trip airline tickets, incurred on behalf of Niederberger for the golfing trips to resorts in Absecon, Pebble Beach and Las Vegas. In each case it is clear that the jury could have found that the Gulf employee who had expended sums on Niederberger was reimbursed by Gulf.

Ferris did not testify, however, to any expense vouchers submitted which related to expenses incurred at the Doral Country Club in Miami. Nor do we find any testimony, other than Hobron's, which directly establishes that Gulf reimbursed Fitzgerald for Niederberger's expenses at Doral. However, we are satisfied that the jury, given the pattern of the arrangements, could permissibly infer that Gulf did, in fact, reimburse Fitzgerald for those expenses. The jury heard Ferris testify that the expense vouchers submitted to Gulf for the Absecon, Pebble Beach and Las Vegas trips were all submitted by Fitzgerald, and in each case Fitzgerald was reimbursed by Gulf. Vendrell testified that Fitzgerald charged Niederberger's expenses at the Doral in Miami with his American Express Card. Martin Boyd, an I.R.S. security inspector, testified that his review of the Niederberger expenses paid by Gulf included trips to Las Vegas, Absecon and Miami, the location of the Doral Country Club. Based on the cumulative impact of that testimony, we find the jury could reasonably infer that Fitzgerald was reimbursed by Gulf for the Doral expenses.

14. The remaining contentions are:
 (1) denial of the defendant's request to examine the grand jury attendance records;
 (2) denial of the defendant's motion to dismiss the indictment for failure to record certain grand jury testimony;
 (3) denial of the defendant's motion to dismiss the indictment for impermissible selective prosecution;
 (4) admitting testimony concerning the defendant's salary;
 (5) admitting testimony concerning an ongoing I.R.S. investigation into Gulf and certain of its employees;

For the foregoing reasons, the judgment of the district court will be affirmed.

(6) admitting testimony concerning Niederberger's confession;

(7) admitting testimony concerning a summary of Gulf's entertainment expenditures on Niederberger;

(8) admitting Gulf travel and expense reports which concerned expenditures on Niederberger;

(9) denial of Niederberger's mistrial motion based on the prosecution's opening remarks to the jury; and

(10) the district court's failure to properly charge the jury.