**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4365

MARC PIERRE HALL, a/k/a Marc
Valeriano, a/k/a Fella,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert E. Payne, District Judge, sitting by designation.
(CR-95-5)

Submitted: September 9, 1997

Decided: November 17, 1997

Before HALL and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James Gronquist, Charlotte, North Carolina, for Appellant. Mark T.
Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant
United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Marc Pierre Hall appeals from a criminal judgment entered against him after a jury trial. The jury found Hall guilty of conspiracy to possess with intent to distribute cocaine and cocaine base within 1000 feet of a school or playground, in violation of 21 U.S.C.A. § 846 (West Supp. 1997) (count one), use and carry of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) & (2) (West Supp. 1997) (counts ten and eleven), and use and carry of a destructive device and damage and destruction of real property in and affecting commerce in violation of 18 U.S.C.A. § 844(i) (West Supp. 1997) (count twelve). The district court imposed a life sentence on count one with a four hundred and eighty month sentence on count twelve to run concurrently with count one, a sixty month sentence on count ten to run consecutively to counts one and twelve, and a life sentence on count eleven to run consecutively to counts one, ten, and twelve. Hall timely noted an appeal. On appeal, Hall argues that there was not sufficient evidence to convict him of the charges and that imposition of the second life sentence for count eleven was error. Finding no error, we affirm.

The Government's evidence tended to show that Hall was part of a conspiracy that distributed cocaine and cocaine base in the Charlotte, North Carolina, area. The organization is referred to as the Mobley organization and was headed by Paul Mobley and his nephew Darwin Mobley. Hall primarily worked for Darwin Mobley (Mobley). At trial, Mobley testified that he fronted Hall approximately one kilogram of crack cocaine each week. Hall had several people who would make sales and delivery of the crack for him. The Government showed that several members of the conspiracy lived and dealt the drugs within 1000 feet of a school or playground.

Mobley testified that Hall participated in a "home invasion" or robbery of one of Mobley's suppliers, William Matthews. The invasion

2

was intended to retaliate for Matthews allegedly "shorting" Mobley of drugs. Mobley testified that he provided firearms, including an SKS assault rifle, for the Matthews home invasion.

Mobley also testified regarding another retaliatory incident. This incident stemmed from an episode that occurred when a quantity of Paul Mobley's drugs disappeared. Allegedly, Paul Mobley's girlfriend gave eighteen ounces of Paul's crack cocaine to Wesley Hunter without compensation. Paul wanted someone to harm Hunter in retaliation. Darwin Mobley suggested that Hall could take care of it for Paul. The Government's evidence tended to show that Hall arranged for his girlfriend, Tracy Rosner, and two juveniles, Maurice Mobley and Freddie Roseboro, to accompany him to Hunter's residence. The Government presented evidence that Rosner and the juveniles were responsible for lobbing a firebomb into Hunter's residence.

Jesse Mobley, Darwin's brother and another member of the conspiracy, testified about Hall's involvement in the conspiracy. Jesse testified about two drug deals that he made with Hall and corroborated Darwin's testimony regarding Hall's sharing of an apartment with Darwin, the Matthews robbery, and the Hunter residence firebombing. Paul Mobley also testified about the drug organization. He stated that he, Jesse, and Darwin had been involved in the drug business together. He also testified that he formerly had a girlfriend named Leslie Hunter, sister of Wesley Hunter, and that he had stored a half kilogram of cocaine at her residence that disappeared. Paul testified that Darwin offered Hall to him as a hit man and he had several conversations with Hall about assaulting Hunter. Hunter also testified that he was involved in distributing cocaine and that Paul Mobley was one of his customers. He testified that at the time of the firebombing he was storing a kilogram of cocaine and had a telephone at his residence that he used in furtherance of his drug business. Finally, Tracy Rosner was a reluctant Government witness and testified that Hall drove Maurice Mobley and Freddie Roseboro to Hunter's house with the gasoline-filled coke bottles on the night of the firebombing.

Hall challenges the sufficiency of the evidence supporting his conspiracy conviction, arguing that "the Government paraded before the jury a number of drug dealers who had nothing to lose and everything to gain." On direct review of this issue, we honor the rule that a jury

verdict "<u>must be sustained</u> if there is substantial evidence, taking the view most favorable to the Government, to support it." <u>See United States v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996) (quoting <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942)), <u>cert. denied</u>, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). After reviewing the evidence presented by the Government and Hall at trial, we conclude that the jury had sufficient evidence to support the conspiracy conviction.

Hall next argues that there was not a sufficient nexus between interstate commerce and the Hunter private residence, the subject of the firebombing, as required by 18 U.S.C.A. § 844(i). Section 844(i) requires that the subject of the damage or destruction be "any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C.A. § 844(i). The Government argues that it established the required nexus because Hunter testified that he stored a large quantity of cocaine at the house and used the telephone to conduct business in the drug trade.

We have held that section 844(i) applies to private residences. <u>See United States v. Ramey</u>, 24 F.3d 602, 607 (4th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1103 (1995) (holding that a trailer's consumption of electricity from an interstate power grid is a sufficient activity affecting commerce); <u>see also United States v. Stillwell</u>, 900 F.2d 1104, 1111 (7th Cir. 1990) (holding that receipt of natural gas that has traveled through interstate commerce is enough to establish the nexus). The Seventh Circuit has also found that the use of a computer and a telephone to make interstate phone calls for business purposes is enough to establish the nexus. <u>See United States v. Moran</u>, 845 F.2d 135, 138 (7th Cir. 1988). An illegal business, such as Hunter's drug trade, does not disqualify it from consideration as an activity affecting interstate commerce. <u>See United States v. Barton</u> , 647 F.2d 224, 232 (2d Cir. 1981) (illegal gambling club run in private home was an activity affecting interstate commerce). We find that Hunter's use of his residence to store cocaine and use of the telephone from his home to conduct drug deals is sufficient to establish the required nexus under 18 U.S.C. § 844(i), and Hall's conviction was proper on this count.

Next, Hall argues that the evidence at trial was insufficient to sustain his conviction for operation of the conspiracy within 1000 feet of

4

a school or playground in violation of 21 U.S.C.§ 860 (1994). The indictment charged that the conspiracy violated 21 U.S.C. § 860 because of drug distribution by the conspiracy "within 1,000 feet of a school and 1,000 feet of a playground." The Government could prove this count by showing distribution within 1000 feet of a school or a playground. Although the statute under which count one was charged is written in the disjunctive, see 21 U.S.C. § 860, it is well-settled that a charging document may be written in the conjunctive and be proved in the disjunctive. See United States v. Niederberger, 580 F.2d 63, 67-68 (3d Cir. 1978).

Hall argues that the playground at the Vantage 78 apartment complex was not a public playground as defined by the statute. The district court held a hearing to determine whether the Government could prove distribution within 1000 feet of a school or playground. The district court determined that the Government could certainly prove distribution within 1000 feet of the Christian Learner Academy, a private elementary school as defined in 21 U.S.C. § 860(a). Hall did not object to the district court's finding that the Christian Learner Academy was a private elementary school within 1000 feet of the conspiracy's distributions. Therefore we find that the district court did not plainly err in its determination and we do not need to reach the issue of whether the adjacent playground was open to the public.

Finally, Hall argues that he did not use the firebomb as use is defined under Bailey, and therefore the evidence was not sufficient to support his conviction on count eleven for a violation of 18 U.S.C.A. § 924(c). The indictment charged that Hall knowingly used and carried a destructive device and aided and abetted another in the use of the device.**1** Hall argues that the evidence presented at trial does not demonstrate use or carry by him.**2** The evidence at trial established

---

**1** Hall does not object to the jury instructions given on this count and does not challenge his conviction on count ten, the other 18 U.S.C.A. § 924(c) violation.
**2** The Government argues that even if the evidence at trial was insufficient to demonstrate that Hall used or carried the device, the conviction is still proper because the use and carry of the device was incident to the conspiracy and Hall would be guilty of the conduct as a principal despite the fact that he did not commit the direct act. The Government also advances the argument that Hall could still be responsible for the act because he aided and abetted Tracy Rosner. For the reasons that follow, we find it unnecessary to address these arguments.

5

that Hall drove Rosner and the two juveniles to the Hunter residence. The destructive device was present in the vehicle on the drive to the Hunter residence.

First, we again note that although the statute under which count eleven was charged is written in the disjunctive, see 18 U.S.C.A. § 924(c), it is well-settled that a charging document may be written in the conjunctive and be proved in the disjunctive. See Niederberger, 580 F.2d at 67-68. Therefore, if the Government could prove either use or carry by Hall, the conviction on count eleven and the consecutive sentence imposed would be proper.

With regard to the "carry" prong of § 924(c)(1), we have held that there must be evidence of "bearing, movement, conveyance, or transportation of the firearm." See United States v. Mitchell, 104 F.3d 649, 653 (4th Cir. 1997). This court has held that knowingly transporting a weapon in a car during or in relation to a drug transaction satisfies the carry prong of § 924(c). Id. at 654. We therefore find that the evidence was sufficient to convict Hall on count eleven.

Accordingly, we affirm Hall's convictions and sentence. We deny Hall's motions to file a pro se supplemental formal brief, for bail pending appeal, "to protect the record for possible procedural default," "to protect the record and Constitutional rights against procedural default," and "to protect against procedural default and constitutional review De Novo." We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6